WILLIAMS, Plaintiff in Error, vs. DONGAN, Defendant in Error.

1. D. bought a claim to a tract of land in 1820, and soon afterwards took possession of it, built a dwelling, lived upon and cultivated it for eight or ten years, and then removed to Illinois. Afterwards, he paid all the taxes upon the land, had tenants on it part of the time, and when not tenanted, had an agent in the neighborhood to rent it out for him and protect it from trespassers. *Held*, this was such an adverse possession as, after the lapse of twenty years, was protected by the statute of limitations.

2. There is no tacking of disabilities under our statute of limitations.

*Error to St. Louis Court of Common Pleas.*

Action commenced in June, 1851, for the possession of 160 arpens of land on the river Des Peres in St. Louis county, being part of a tract of 1600 arpens granted by Zenon Trudeau in 1797, to Therèse Barrois and Francoise Brazeau, and confirmed by the act of congress of April 29, 1816. On the 2d of April, 1811, the said Therèse and Francoise made a division of the tract, and executed to each other deeds for their respective halves. The western 800 arpens, including the land in controversy, were conveyed to Francoise. On the 4th of April, 1811, Francoise conveyed 266⅔ arpens, including the land in dispute, to her daughter, Genevieve Duchouquette. Genevieve was lawfully married to Pierre Duchouquette in 1797, and they lived together as man and wife until December 24, 1803, at which time they separated, and never afterwards lived together. At the time of the separation, they executed written articles, dissolving the marriage (so far as their agreement could dissolve it,) dividing the property owned by them in community, renouncing mutually all rights and powers flowing from their marriage contract, (so far as they could by agreement do so,) and granting to each other the free and absolute disposition and control of their property and conduct, as if they never had been married. Genevieve died November 13, 1822, leaving one daughter, Marie Sophie, who was born Feb-

rúary 26, 1807, and married to James Gonsollis, January 2, 1823. Pierre Duchouquette died in 1835 or 1836. On the 16th of March, 1812, Genevieve Duchouquette sold the 266⅔ arpens acquired from her mother to John Murphy, and on the same day, Murphy mortgaged the same to Genevieve to secure the payment of a sum of money. On the 27th of December, 1819, Genevieve assigned the mortgage to Archibald Gamble, and on the 17th of January, 1820, conveyed to him all her interest in the land. On the 17th of July, 1820, Gamble assigned the mortgage to the defendant, Dongan, and conveyed to him all his interest in the land. The defendant instituted a suit to foreclose the mortgage, and became the purchaser of the land at the sale under the judgment of foreclosure, and received from the sheriff a deed bearing date February 6, 1822. Defendant took possession of the land soon after his purchase from Gamble, in 1821 or 1822, built a dwelling, made fields, and lived upon the land for eight or ten years, and then removed to the state of Illinois. Since that time, he has never personally been upon the land, but part of the time has had tenants upon it, and when not tenanted, has all the time had an agent residing in the neighborhood, charged with the duty of renting it out, if tenants could be had to pay the taxes, and to superintend and control, and protect it from trespassers. The defendant always paid the taxes, and no person under whom plaintiff claims ever paid any taxes.

The plaintiff's title was as follows : On the 23d of October, 1841, James Gonsollis and Marie Sophie, his wife, claiming the tract of 266⅔ arpens in right of the wife's mother, conveyed the same to John E. Mower. Mower afterwards conveyed all the tract except the 160 arpens in controversy to James Consaul. Mower failing to pay the purchase money, the tract in dispute was sold under a decree of court upon a bill filed by Gonsollis and wife, and P. C. Morehead, under whom plaintiff claims, became the purchaser, and received a sheriff's deed dated March 11, 1850.

Upon an agreed case, substantially as above stated, the court

below gave judgment for the defendant. The plaintiff brings the case to this court by writ of error.

*Glover & Richardson*, for plaintiff in error, relied upon the following points : 1. By the Spanish law, whatever property fell to the wife during marriage by any merely lucrative title was paraphernal, (*Lindell* v. *McNair*, 4 Mo. Rep. 382,) and could not be sold by the wife during coverture, unless the husband joined in the sale. (*Picotte* v. *Cooley*, 10 Mo. Rep. 312. *Youse* v. *Norcum*, 12 Mo. Rep. 558. *Childress* v. *Cutter*, 16 Mo. Rep. 41.) 2. The articles of separation did not confer on the wife the power to alien without further consent of the husband. Those articles were void, as being both against good morals and against the Spanish law. (1 Moreau & Carleton's Partidas, p. 487, 493, 502. 2 Id. *Gonsollis and wife* v. *Duchouquette*, 1 Mo. Rep. 476.)

Mr. *Dayton* and Mr. *B. Bates*, for defendant in error, relied upon the following points, among others : 1. The articles of separation between Duchouquette and wife of December 24, 1803, were valid and effectual, and accomplished all the objects therein mentioned and intended. Mrs. Duchouquette having acquired and sold the land in controversy subsequent to this contract, the title passed to the purchaser. (*Labbé's heirs* v. *Abot et al.*, 2 Lou'a. 553.) 2. The land in controversy, acquired by Genevieve by deed of gift from her mother, was her separate property, (1 Lou'a. 322. 5 Lou'a. 742. 6 Martin, 14,) which, by the Spanish law, she had a right to sell, even during coverture, without her husband joining in or consenting to the conveyance. (1 Brown's Civil Law, 269, 82, 255. 1 Domat, 390, §884 to 892. 1 Moreau & Carleton's Partidas, 523, §17. *Flowers* v. *O'Connor*, 8 Martin, (N. S.) 555. *Preston* v. *Humphreys*, 5 Robinson, 299. *Picotte* v. *Cooley*, 10 Mo. Rep. 318.) 3. But even if the husband's consent to the sale was necessary, such consent is sufficiently shown by the articles of separation. If, however, a written consent is not shown by the articles of separation, a verbal consent, which, under the Spanish law, was sufficient, will be

presumed after this lapse of time and under the circumstances. 4. The statute of limitations is a good bar to the plaintiff's claim. The possession of Dongan is a sufficient adverse possession. (Angell on Limitations, (ed. of 1829,) ch. 4, p. 71 *et seq.* and cases there cited.)

RYLAND, Judge, delivered the opinion of the court.

As the point raised on the statute of limitations in this case must, in the opinion of this court, determine the question in controversy, it will only be necessary to consider it. We shall not, therefore, touch the other questions involved, but pass them by, with the remark, that they involve much learning, and require more time and research than we can now bestow, especially when the point we decide will settle the case. From the agreed facts, as they are upon the record, it seems that the widow Charleville was the owner of the land in controversy in 1811, and that she granted the same to Genevieve Duchouquette, her daughter, by deed dated 4th April, 1811; that Genevieve Duchouquette, being in the legal possession of the land, received a mortgage from one John Murphy, on the 16th of March, 1812, for the same land, to secure the payment of a sum of money; that she assigned said mortgage to Archibald Gamble and sold to him all her interest in said land, in January, 1820. The mortgage was assigned 27th December, 1819, and the deed for the land dated 17th January, 1820.

Archibald Gamble sold and conveyed the land by deed dated July 17th, 1820, to the defendant, Dongan. Dongan took possession of the land soon after his purchase of it from Gamble, in 1821 or 1822. He foreclosed the mortgage by a judgment of the Circuit Court of St. Louis county, at the August term, 1821, and purchased the land at sheriff's sale, on the 6th day of February, 1822, and received from the sheriff a deed for the same, of that date. It is agreed that Dongan took possession of the land soon after his purchase from Gamble in 1821 or 1822, and that he built a dwelling house, made fields,

13—VOL. XX.

and lived upon the land for eight or ten years, and then removed to the state of Illinois. Since that time, he has never personally been upon the land, but part of the time has had tenants on the land ; and when not tenanted, has all the time had an agent residing in the neighborhood, charged with the duty to rent it out if tenants could be had, to pay the taxes and to superintend and control and protect it from trespasses, and that he habitually paid the taxes ; that no person under whom the plaintiff claims did pay taxes.

It also appears that Pierre Duchouquette and Genevieve Charleville were lawfully married on 23d February, 1797 ; they lived together as man and wife until the 24th of December, 1803, and then separated, and never lived together afterwards, as man and wife ; that they mutually executed a contract or articles of separation in writing, dissolving the marriage (so far as their agreement could dissolve it,) dividing the property owned by them in community, renouncing mutually all rights and powers flowing from their matrimonial or marriage contract, and granting to each other the free and absolute disposition and control of their property and conduct, as if they never had been married ; that they never went beyond the limits of St. Louis county after their marriage ; that Genevieve died on the 13th November, 1822 ; that Pierre died in 1835 or '36, intestate ; that Genevieve had two children, a son and a daughter ; that the son died without issue in the life time of his mother ; that the daughter is the same Sophie or Marie Sophie mentioned in the plaintiff's petition, under whom he derives titles. The said Sophie or Marie Sophie was born on the 26th February, 1807, and on the 2d day of January, 1823, intermarried with one James Gonsollis, who died one or two years before this suit was commenced. At the death of her mother, Genevieve, 13th November, 1822, Marie was a minor, unmarried, and remained single until the 2d January, 1823. Dongan was in possession and remained in possession for some eight or ten years from the year 1821 or some time in 1822. He took possession *soon* after he bought of Gamble ; his pur-

Williams *v.* Dongan.

chase from Gamble was in July, 1820; his purchase at sheriff's sale was in February, 1822. It may then be supposed he was at the time in possession : his possession was open, public ; he built a house, made fields, lived on the land, paid taxes always, had tenants after he moved to Illinois, and had his agent to take care of and attend to it, in the neighborhood.

The right of the daughter, Marie Sophie, if she had any, accrued upon the death of her mother, which took place on the 13th of November, 1822. She was then sole, and infancy was at that time the only disability under which she labored, or by which her right at that time was protected under the statute of limitations. The statute passed in December, 1818, concerning limitation of actions, must govern this case. That declares, "From henceforth, no person or persons whatsoever shall make entry into any lands, tenements or hereditaments, after the expiration of twenty years next after his, her or their right or title to the same first descended or accrued," &c.

§2. " If any person or persons having such right or title be, or shall, at the time such right or title first descended or accrued, be within the age of twenty-one years, *feme covert,* &c., then such person or persons, and the heir or heirs of such person or persons, shall and may, notwithstanding the said twenty years be expired, bring his, her or their action, or make his, her or their entry, as he, she or they might have done before the passing of this act: Provided, that such person or persons shall, within twenty years next after attaining full age, &c., sue for the same, and at no time after the said twenty years."

The court, from the agreed facts, found for the defendant, and this finding we think right. From the facts and the statute of limitations then in force, we think the court did not err in giving judgment for the defendant.

There was a space of time between the concurrence of the two disabilities of infancy and coverture. The right descended to her, accrued to her, while she was under one only of these disabilities—infancy. She became of age on 26th of February, in the year 1828. At that time, then, the statute com-

menced running against her, although she was a married woman. The disability arising from the marriage commenced after her rights had accrued. The twenty years expired then on the 26th February, 1848, and this action was commenced in June, 1851, not within the time, and is consequently barred.

I remarked, in the beginning, that, as this one point would settle this controversy, it would be useless labor to consider the questions arising on the articles of separation, or the power of the wife to sell lands which had been given to her after this separation, or given to her during her marriage, disregarding the separation.

I am strongly inclined to think that, should the court declare the articles of separation of no effect, in regard to the power of dissolving the marriage relation between the husband, Pierre, and Genevieve, the wife, yet it would be but a fair interpretation of them, to consider them as indicating the consent of the husband to the wife to sell her property. However, as the statute of limitations is, beyond all doubt, a bar to the plaintiff's action, we confine our opinion alone to that one point. There is no tacking of disabilities under our statute of limitations. See cases of *Eager* v. *Commonwealth*, 4 Mass. Rep. 182. *Bunce et al.*, v. *Wolcott et al.*, 2 Conn. 27. *Griswold* v. *Butler*, 3 Conn. 227. *Doe ex dem.* v. *Jones*, 4 Term Rep. 301, 307. *Stowell* v. *Lord Zouch*, Plowden's Rep. 353, as far back as 10th year of Elizabeth.

The judgment below is affirmed, the other judges concurring.