MENKENS, Appellant, v. OVENHOUSE, Respondent.

1. Where in an action for the possession of land, the defence relied on is the statute of limitations, and the court finds that in the year 1818, one B., under whom defendant claimed, took possession of the tract sued for, under a deed of conveyance of the same, and let it out to various tenants at various times after the date of the purchase, until his death ; that at all times since

Menkens v. Ovenhouse.

his purchase, B., and since his death his representatives have claimed the said land and exercised ownership over it, by entering upon it, by cutting timber and wood upon it, by prosecuting others for trespasses to the land, and by constantly having an agent living near the land with authority to superintend and protect it, and rent it out, and by regularly paying the taxes ; that these successive possessions were actual, continuous, and adverse to the plaintiff and those under whom he claimed ; *held,* that these facts found by the court warranted a judgment for defendant; notwithstanding it was also found that the land sued for was not used as a homestead or dwelling, and that during B.'s claim the land was often untenanted and uncultivated, sometimes for several years at a time ; that at such times the fences were thrown down or destroyed, and the land lay open. (Scott, J., dissenting.)

## *Appeal from St. Louis Land Court.*

*Casselberry,* for appellant. 1. There was no sufficient adverse possession. There should be an actual, hostile, distinct, visible and notorious corporeal occupation of the land during the whole of the time the statute has to run. (5 Cow. 219 ; 2 Johns. 230 ; 2 N. & McC. 343 ; 1 Rice, 10 ; 1 Metc. 528 ; 10 Johns. 477 ; 4 Mass. 416 ; 2 Aik. 364 ; 4 Bibb, 544 ; 1 Marsh. 59, 506 ; 5 Litt. 22 ; 6 S. & R. 21 ; 11 Gill & Jo. 371.) 2. The payment of taxes alone, though it may extend the limits of a possession, does not constitute it, and there must accompany it an actual occupancy of at least a part of the land. (10 Watts, 142 ; 4 Whart. 298.)

*Gantt,* for respondent. 1. The fact that the land was sometimes untenanted, and the fences occasionally thrown down, will not prevent the running of the statute of limitation. (17 S. & R. 104 ; 10 id. 303 ; 7 Watts, 35 ; 3 id. 69 ; 11 Pet. C. C. 41 ; 10 Pet. 442.)

Ryland, Judge, delivered the opinion of the court.

The only question in this case is, will the finding of the facts by the court sustain the judgment rendered thereon ? There is no evidence preserved on the record, no motion to review the finding of the facts by the court, and nothing for this court to consider but the finding of the facts and the judgment thereon.

The facts found are as follows : " A tract of land, whereof the land in controversy is part, was conceded by the lieutenant governor Piernas to Clement Delor de Traget, in 1771, and was confirmed to his representatives (not naming them) by the act of congress of 29th April, 1816. Pierre Marie (under whom plaintiff claims) was one of the grandsons of said Delor, being a son of one of his daughters by his first marriage. Pierre Marie's mother, Rosette by name, was married to Alexis Marie, by whom she had three sons, all of whom are dead. The first two, Alexis and Gregoire, died respectively in 1836 and 1849, and Pierre died this year, in the summer. Clement Delor de Traget died before the change of government, and both Alexis and Rosette Marie died before 1822. Clement Delor de Traget had ten children, sons and daughters, five by the first marriage and five by the second. Two of the sons by the first marriage died unmarried and without issue. C. Delor de Traget had a written contract of marriage with his second wife, purporting to establish a community of goods, according to the laws of Castile, and importing that he had made a like contract with his first wife. On the 20th October, 1851, Pierre Marie conveyed to the plaintiff all his right to the land, by a quit claim deed, for the consideration of two dollars. The annual value of said land is three dollars per acre. There was testimony tending to prove that before the year 1814, and after the change of government, persons other than the descendants and heirs of said Clement Delor, and among them one Glenn possessed and cultivated the land in question. On the 7th March, 1814, persons claiming to be legal representatives of Glenn conveyed the said land by deed to one Michael Tesson, called Honoré, and said Honoré entered upon the land under that conveyance, and possessed and cultivated the same. On the 24th of February, 1817, said Honoré, by deed, conveyed the said land to one Joseph Presse, who entered upon it under that conveyance, and possessed and cultivated the same. On the 19th March, 1818, said Presse, by deed, conveyed the said land to Bartholomy Berthold, who entered upon it under that convey-

ance, and possessed the same, and let it out to various tenants, at different times, from the date of his purchase, in 1818, till his death ; some of which tenants cultivated the land, and others used it as a race course and place of amusement.

" After the death of said Berthold, his legal representatives had possession of said land, and the present defendant is their tenant. At all times, since the purchase of said land by said Berthold, he in his lifetime, and his representatives since his death, have claimed the said land and exercised ownership over it, by entering upon it, by cutting timber and wood upon it, and prosecuting others, and by constantly having an agent living near the land, with authority to superintend and protect it, and rent it out, and by regularly paying the taxes. The land was in the common field of Carondelet, and was not used as a homestead or dwelling place. During the time of Berthold's claim, the land was often untenanted and uncultivated ; sometimes for several years at a time. At such times, the fences were thrown down or destroyed, and the land lay open. The land was in possession of said Honoré from the time of his purchase thereof, in 1814, until he conveyed it to Presse, as above stated. It was then in Presse's possession until he conveyed it to Berthold, as above stated. It was in Berthold's possession until his death, and ever since his death it has been and now is in the possession of his legal representatives.

" And those successive possessions were actual, continuous, and adverse to the plaintiff and those under whom he claims. The conclusion of law upon these facts is, that the plaintiff ought not to recover in this action. All the issues arising on the pleadings, the court finds for the defendant."

Now upon this finding, I am of the opinion that the judgment is warranted, and that it should be affirmed. Here has been a long possession—from 1814, forty years—a possession prior to the existence of the statute of limitations in the territory, now state of Missouri. But let it begin from 1818: " On the 19th March, 1818, Presse, by deed, conveyed the land to Bartholemy

Berthold, who entered upon it under that conveyance, and possessed the same and let it out to various tenants, at different times, from the date of his purchase until his death; some of which tenants cultivated the land, and others used it as a race course and place of amusement."

The land was not used as a homestead. The lower court expressly finds that the successive possessions of Honoré, Presse and Berthold, were " actual, continuous, and adverse to the plaintiff and those under whom he claims." The only possible ground on which any doubt can arise as to this possession, is in what is stated by the court, " that during the time of Berthold's claim, the land was often untenanted and uncultivated; sometimes for several years at a time. At such times, the fences were thrown down or destroyed, and the land lay open." There was no dwelling-house on the land; but Berthold and his representatives constantly paid taxes on the land—always had an agent looking after it and keeping off trespassers. They prosecuted others for trespasses committed on the land, and were exercising ownership over it by entering upon it and by cutting timber and wood upon it. Now I do not feel at liberty to hunt out possible objections to the finding of the facts. I am inclined to think the lower court, before which the testimony was given, is better prepared to feel the force of such evidence and to state the general facts proved, and to give the proper judgment thereon, than I may be, by barely looking over his statements of such facts. I must trust to his judgment somewhat, and when I find facts amply sufficient stated, as found by him, though he may state at the same time other facts also as found, which tend to cast some doubt over a petition of his finding, yet, if the entire finding will support his judgment, I will let it remain undisturbed. When the facts found do not warrant the judgment, I will reverse. In this case, I think the facts found do warrant the judgment.

" An entry by one man on the land of another, is an ouster of the legal possession, arising from the title or not, according to the intention with which it is done; if made otherwise, it is

a mere trespass ; in legal language, the intention guides the en-
try and fixes its character.    It is well settled that, to constitute
an adverse possession, there need not be a fence, building or
other improvement.    It suffices for this purpose that visible and
notorious acts of ownership are exercised over the premises in
controversy, after an entry under claim and color of title.    So
much depends on the nature and situation of the property, the
uses to which it can be applied, or to which the owner or claim-
ant may choose to apply it, that it is difficult to lay down any
precise rule adapted to all cases.    But it may with safety be
said that, where acts of ownership have been done upon the
land, which, from their nature, indicate a notorious claim of
property in it, and are continued for twenty years, with knowl-
edge of an adverse claimant, without interruption or adverse
entry by him for twenty years, such acts are evidence of an
ouster of a former owner, and an actual adverse possession
against him.    Neither actual occupation, cultivation or resi-
dence are necessary to constitute actual possession, when the
property is so situated as not to admit of any permanent use-
ful improvement, and the continued claim of the party has been
evidenced by public acts or ownership, such as he would exer-
cise over property which he claimed in his own right, and would
not exercise over property which he did not claim."    (Ewing
v. Burnet, 11 Peters, 52; 6 Peters, 513 ; 10 Peters, 442.)
Now the authorities are ample in support of the doctrine that
an intruder or squatter, by entering on land, gets in law pos-
session only so far as his immediate occupation extends, and
it may be said to last no longer than his actual occupation
continues.    But not so with him who enters, claiming title, or
under color of title.    Chief Justice Gibson defines color of title
thus :  " I would say that an entry is, by color of title, when it
is made under a *bona fide* and not a pretended claim to a title
existing in another. "    Chief Justice Gibson, in McCall v.
Neely, 3 Watts, 73, speaking of the payment of taxes, says :
" It was said by Chief Justice Tilghman, in the case of Roger
v. Benlow, and reported by Mr. Justice Rogers, in Read v.

Goodyear, 17 Serg. & Raw. 350, 'that payment of the taxes raises a presumption of ouster from the whole tract, and that the acquiescence of the owner is tantamount to an acknowledgment of such ouster. These dicta, though not conclusive, are entitled to a preponderating weight, as well for the respect we feel for the quarter whence they come as for their intrinsic good sense.'" (Heiser v. Riehle, 7 Watts, 35.) "The statute of limitations is a statute of *repose*, which is entitled to a fair and liberal construction." "The man who enters into a tract of land, with title, has immediately, by construction of law, the actual possession of the whole tract. But he who enters without title, is a trespasser, and has no constructive possession, but is limited to the spot actually occupied. These are the general principles which govern the law of entry and possession. But there may be cases in which a jury might well presume an actual ouster, although the person who had the right was not excluded by actual enclosure or cultivation." (10 Serg. & Rawle, 306; 17 Serg. & Rawle, 109.) The case of Williams v. Dougan, reported in 20 Mo. Rep. 186, covers the main features of this case, and I think must settle it. In the case cited by plaintiff, of Doe v. Campbell, (10 Johns.) there was no regular deduction of title or privity and continuity of possession shown and deduced down from Smith to Elliot, or to any of the other defendants. To constitute a disseizin of the owner of uncultivated lands, by entry and occupation, of a party not claiming title to the land, the occupation must be of that nature and notoriety that the owner may be presumed to know that there is a possession of the land adverse to his title, otherwise a man may be disseized without his knowledge, and the statute of limitations may run against him, while he has no ground to believe that his seizin has been interrupted. (4 Mass. 416.) In Sorber v. Willing, (10 Watts, 142,) it was said: "Payment of taxes alone, though it may extend the limits of an adverse possession, does not constitute it." From a general review of many of the cases reported in the books, though there is some difference between

them, yet there may be gleaned from them the principles embraced in this opinion. There is a difference in regard to the possession of the mere trespasser and of him who enters claiming title.

Now the defendants here are in possession under a claim of title—a deed from Presse, in 1818, to Berthold, and a possession by him under that deed. His cultivation and occupation were only interrupted for a few years, when the fences were broken down. He all the time exercised acts of ownership by entering upon it, cutting down timber, prosecuting for trespasses committed on it by others, and paying continually the taxes — having an agent continually in the neighborhood to guard it from the trespasses of others, and to manage and attend to it.

If any people need repose from litigation in regard to land titles, it is the people of this county and city ; and if the statute of limitations is entitled to the praise bestowed on it by Justice Rogers, of Pennsylvania, that it is a statute of repose, I am willing to give it a fair and liberal operation here, where it is so much needed.

I am therefore for affirming the judgment below. Judge Leonard concurs in affirming the judgment, but not in all the propositions laid down in the opinion.

Leonard, J. I concur in affirming this judgment, without, however, concurring altogether in the grounds and reasonings of Judge Ryland's opinion.

Scott, J., dissents.