LEFREMORE C. MUSICK, Respondent, *v.* CHARLES BARNEY, Appellant.

1. *Deeds — Acknowledgments of, by justice — County where land does not lie — Effect of — Notice.*—Prior to the act of 1847, an acknowledgment taken before a justice of the peace, in a county where the lands do not lie, is a nullity; and the record of a deed so acknowledged imparts no legal notice. But if the deed was actually put upon record, and if the purchaser saw that record, it would be very strong if not conclusive evidence of actual notice. Notice in such case is a question of fact, and anything tending to prove it is competent evidence.

If, in the neighborhood where the party to be charged with notice resides, the ownership of property is notorious, it is a fact to be considered as tending to show that he was advised of such ownership.

2. *Evidence — Deeds — Imperfect acknowledgments — Proof — Construction of statute.*—Under the act of 1847 (Wagn. Stat. 595, §§ 35, 36), copies of the record of instruments drawn theretofore and imperfectly acknowledged can not be received in evidence without satisfactory proof of the execution of the original and the truth of the copy.

3. *Lands and land titles — Adverse possession, what sufficient.*—Proof of the fact that one cut rails from a tract of land and paid taxes on it for several years, erected a temporary structure upon it, which he afterward removed, and openly claimed it as his own, where it further appears that he failed to occupy, improve or inclose it, is not sufficient to make out a case of adverse possession. In order to bar the true owner, the adverse possession must be such that it may be presumed to have been known and acquiesced in by him. The indications of the claim and possession should be so patent that he could not be deceived, and so that if he remains in ignorance it is his fault.

Where there is occupation and improvement, knowledge may be presumed. But such knowledge cannot be predicated upon acts of ownership merely.

4. *Lands and land titles — Possession under claim as heir—Declarations, etc.*—Where one goes into possession under color and claim of title, as heir of his father, his possession is that of tenant in common with the other heirs. His declarations that he claims the whole for himself, and intends to give what he thinks right to the other heirs, cannot make his possession adverse to them.

### *Appeal from Lincoln Circuit Court.*

*Dwyer & Music,* for respondent, cited 2 Stark. Ev. 515; 5 Phil. Ev. 265; Ewing v. Burnet, 11 Pet. 41; Ellicott v. Pearl, 10 Pet. 442; Menkens v. Ovenhouse, 22 Mo. 70; Williams v. Donegan, 20 Mo. 186; Draper v. Shoot, 25 Mo. 197; City of St. Louis v. Gorman, 29 Mo. 593; De Grow v. Taylor, 37 Mo. 310; City of Carondelet v. Simon, *id.* 408;

Schultz v. Lindell, 30 Mo. 310 ; Wall *et al.* v. Schindler, 47 Mo. 282.

*J. B. Henderson*, for appellant.

BLISS, Judge, delivered the opinion of the court.

Both parties claim through one Herrick : the plaintiff, by virtue of an execution sale and purchase by one Fiske, his father's grantor, and also by adverse enjoyment for over ten years ; and the defendant by a deed executed previous to the judgment and sale. Both sales were in 1837. The land is unimproved, at least until recently, by defendant, and there have been several conveyances in the chain through which each party traces his title, which need not be considered. The plaintiff does not seem to deny that defendant's title would be the best, had the original deed from Herrick been properly acknowledged, and had there been no such adverse possession as would alienate it.

First, as to the effect of the deed and the propriety of admitting it in evidence. It was admitted that it was not acknowledged according to law, although it was duly recorded, but the defendant claims that the purchaser at the execution sale, and his grantees down to the plaintiff's ancestor, knew of its existence ; and if this were so, it does not matter whether it was acknowledged at all.

Upon this question of notice the court, by several declarations of law, held : first, that the record of the deed under consideration was, previous to the act of 1847, no constructive notice to the purchaser upon execution, or those claiming under him ; second, that a knowledge of the record was no notice of the contents of the deed ; and, third, that public notoriety of the deed and the defendant's ownership was not to be received or considered as evidence in charging the plaintiff, or those under whom he claims, with the actual knowledge spoken of in the statute. Upon the first point the court was correct. The acknowledgment was taken before a justice of the peace of a county in which the lands do not lie, and was unauthorized by the statute. (Bishop v. Schneider, 46 Mo. 472.) Not being acknowledged, its record was outside the statute, and of itself imparted no notice except

as provided by the act of 1847. (Stevens v. Hampton, 46 Mo. 404; Bishop v. Schneider, *supra.*) But the second proposition does not follow. The statute requires "actual notice," and any evidence tending to prove such notice is competent, and should go to the jury. If the deed was actually put upon record, although not so acknowledged that its record would be constructive notice, and if the party saw that record, it would be very strong, if not conclusive, evidence of the actual notice required by statute. The object of the registry act is to protect innocent purchasers, and no subsequent purchaser can be innocent who knew of a previous conveyance, whether it be so acknowledged as to authorize its record or not. And it would be absurd to say that an exhibition to him of a copy of such conveyance, made under circumstances that would presume it to be a genuine copy, would be no evidence of such notice. It is not certain that the court intended to say precisely that, but its language will bear that construction; and it is otherwise apparent that more evidence of the actual notice required by the statute was demanded than has been held to be necessary. Notice is a question of fact, and anything tending to prove it is competent evidence (Maupin v. Emmons, 47 Mo. 306), and thus the third view of the court was also erroneous. If, in the neighborhood where the party to be charged with notice resides, the ownership of certain property is notorious, it is a fact to be considered as tending to show that he was advised of such ownership.

Upon due proof of the loss of the original deed from Herrick, a certified transcript of the record of the same was produced, and after several witnesses had testified that it was a correct copy, it was offered in evidence. It seems to have been at first received, but afterward the court declared that it was not properly in evidence. Previous to the act of 1847, the record of a deed imperfectly acknowledged did not operate as constructive notice. The provision of said act upon the subject is embodied in section 35 of the present statute, and by the next section (Wagn. Stat. 595, § 36) it is provided that certified or other copies of such record shall not be received in evidence without proof of the execution of the original. This provision seems to have been

made to prevent misconstruction, for the proof of the loss of an instrument and the production of a copy cannot dispense with proof of its execution, in the same manner as though the original were produced (Jackson v. Frier, 16 Johns. 196 ; Kimball v. Morrill, 4 Me. 368), and it was doubtless feared that if such irregular registry should be made to operate as notice, it might be treated as a record proper, transcripts of which would be evidence without proof of execution. (Wagn. Stat. 278, § 30.) The reason for the distinction is obvious. In the one case the requirements of the registry act have not been complied with, and the entry upon the books is no record. In the other case the required formality of acknowledgment or of proof shows that the instrument has been executed ; and, to perpetuate such evidence, a record of the whole is provided for, which, like other like records, is proved by production of the book, or by certified transcripts.

The effect, then, of producing in court the certified copy, is the same as the production of any other copy. The execution of the original and the truth of the copy must be satisfactorily established, and by the best evidence the nature of the case admits of. These are questions of fact, after the court, upon being satisfied of the loss of the original, has admitted secondary evidence ; and such copy, when properly identified, is the most satisfactory evidence of the contents of the original. As this case was tried by the court sitting as a jury, it is difficult to understand whether the court intended to say, as a question of fact, that the execution of the original or the truth of the copy was not shown, or whether the copy was ruled out upon other grounds. There was evidence tending to prove both facts ; its sufficiency was submitted to the court, and no such ambiguous declarations of law should have been made in regard to it.

The plaintiff's chief reliance, however, seems to have been upon a title acquired under the statute of limitations. There was evidence tending to show that his father died in California in 1849 ; that in 1855 the plaintiff moved upon a prairie farm two or three miles from the land in controversy, and commenced cutting rails and wood upon the land to use upon his prairie farm ; that he put up a log cabin upon it, in which his tools were

kept and horses 'sheltered when at work in the timber; that this cabin remained there three or four years, when it was taken down and moved to the farm; that he claimed the land as his own, and continued to cut wood and timber upon it until 1866, when the defendant took possession; that he paid taxes from 1855 to 1866, and that all his acts were open and public; but it does not appear that there was any inclosure, or that any of the land was improved; nor does it appear that defendant, or any one under whom he claims, undertook to take possession of or looked after the land until 1866. It was also shown that in the neighborhood of this farm the chief use of timbered lots by those owning prairie farms was to furnish timber for their use and improvement; that this land was not cleared and could not be cultivated without being cleared. The court, by two declarations of law setting out the above facts in detail, held them sufficient to give the plaintiff a title; and, to sustain its rulings, plaintiff relies principally upon Williams v. Dougan, 20 Mo. 186; Menkins v. Ovenhouse, 22 Mo. 70; Draper v. Shoot, 25 Mo. 197. In the first case, defendant Dougan, who claimed under the statute, took possession, "built a dwelling-house, made fields and lived upon the land for eight or ten years," and, after removing to Illinois, had an agent residing in the neighborhood who rented the premises part of the time and was charged with their control and protection from trespassers and with the payment of taxes, and that they were habitually paid by him. This continued for twenty years, and the court held it to be such a possession as would protect the defendant under the statute. In Menkins v. Ovenhouse the land was not used as a homestead or dwelling-place, and was often untenanted and uncultivated, but had been held for over forty years by different owners by regular sale or by descent, had been possessed and generally cultivated or rented out by those who thus held it. In that case it appeared that timber was cut upon the land by the owners and trespassers prosecuted, and an agent always lived near it to superintend and protect it, rent it out and pay taxes, which were regularly paid; and the court held this such adverse possession as would protect the defendant. In Draper v. Shoot the court sustained certain instructions, given

below, which required the possession to be actual, not constructive, that it "must have been by occupation or cultivation, or by other acts of ownership which were visible, notorious and continuous;" and in commenting upon these instructions the remarks of Scott, J., are claimed to support those given in the case at bar, although the facts there under consideration were quite different.

The fact that the plaintiff went into possession under color and claim of title as heir of his father, makes his possession that of a tenant in common, and he can only prosecute for the interest of which he has been deprived. (1 Pick. 224; 3 Green, Iowa, 30.) It does not appear that his co-tenants are disseized, and, whether so or not, he has no interest in prosecuting for them. The declarations of the plaintiff when sworn as a witness, that he claimed the whole for himself, and intended to give what he thought was right to his brothers, cannot make the possession which he took under his father adverse to the other heirs, but, if he wishes his possession to be considered as having established a title, must be held as the possession of all, for there was no claim or color in him except as one of such heirs.

The subject of adverse possession when there is no actual corporeal occupation of the land is not without difficulty, and courts have not found it easy to give a general statement of what in all cases may constitute such possession. With the short limitation we have in Missouri, it would endanger property rights to permit a loose claim to land, with such acts of ownership only as might be exercised without attracting the attention of the real owner, and without actual occupation, to ripen into title. In order to bar the true owner, the adverse possession relied upon is presumed to have been known and acquiesced in by him. It would be a fraud to deprive him of his property through a claim of which he not only knew nothing in fact, but which was not accompanied by acts that would, if he looked after his property, advise him of its existence. In visiting his land the indications of the claim and possession should be so patent that he could not be deceived, so that if he remains in ignorance it is his own fault. Can this implied notice and acquiescence be predicated upon the facts

above recited? Suppose the owner had visited the land, and especially after the cabin had been removed, would he have seen such evidences of possession by another as to warn him that his title was slipping away from him? And if so, was there anything to notify him as to who was the claimant? He might have seen that timber had been cut, but this of itself only shows a trespass, unfortunately too common to be regarded as evidence of a claim of ownership. The payment of taxes is an act of ownership, the strongest shown by the defendant, and, had it been accompanied by any improvement of the property, would have greatly aided the claim.

The remarks of Scott, J., in Draper v. Shoot, based upon Ewing v. Burnett, 11 Pet. 53, suppose two important facts, wanting in the present case, as necessary to create a disseizin when there is no actual occupation. First, he supposes the claim is made and the acts of ownership exercised with the knowledge of the adverse claimant, and without interruption or adverse entry by him. This is a very important fact. Where there is actual occupation and improvement, knowledge may be presumed, but such knowledge cannot be predicated upon acts of ownership merely; for, especially as to non-residents, they may be exercised and may be notorious in the neighborhood and nothing be done of which the true owner is bound to take notice. It is difficult to conceive that one may be ousted without knowing it, even though his possession be constructive, and it can hardly be predicated upon the constructive possession of another or upon anything short of actual occupation, at least of a part, with claim and color to the whole. The remarks also suppose that the property is so situated as not to admit of any permanent useful improvement. In the case at bar, there is no evidence that the land in controversy would not admit of improvement, but only that it was a wood lot; that the owners of prairie farms in the neighborhood were in the habit of using these wood lots to improve such farms, and that it could not be cultivated without being cleared.

The judgment will be reversed and the cause remanded. The other judges concur.