# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1889.

*(Continued from Volume 99.)*

| | |
|---|---|
| 100 | 13 |
| 100 | 324 |
| 100 | 13 |
| 112 | 313 |
| 100 | 13 |
| 116 | 159 |
| 100 | 13 |
| 129 | 682 |
| 100 | 13 |
| 148 | 92 |
| 100 | 13 |
| 163 | 583 |
| 100 | 13 |
| 164 | 412 |
| 100 | 13 |
| 169 | ³352 |
| 100 | 13 |
| 174 | ¹716 |

BURDETT, *Plaintiff in Error*, v. MAY.

1. **Resulting Trust:** EVIDENCE. Evidence to establish a resulting trust must be so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust.

2. —— : ——. The evidence in this case *held* not to meet the requirements of the foregoing rule.

3. **Equity:** STALE DEMANDS. Courts of equity view with disfavor suits brought long after the transactions in issue have occurred, and long after death has closed the lips of those familiar with the occurrences remote in point of time.

(13)

*Error to Livingston Circuit Court.*—HON. J. M. DAVIS, Judge.

AFFIRMED.

*James L. Davis* and *John A. Hockaday* for plaintiff in error.

(1) In equity proceedings the appellate court will review the evidence offered in the trial court. *Beck v. Pollard,* 55 Mo. 26; *Morey v. Staley,* 54 Mo. 419. (2) Adverse possession to be availing to the party pleading it must be open, notorious and exclusive. When held jointly with the adverse party or those in privity with him, it will not overcome the superior title. *Burk v. Adams,* 80 Mo. 515; *Mays v. Pryce,* 95 Mo. 603; *McQuiddy v. Wear,* 67 Mo. 74; *Hamilton v. Boggess,* 63 Mo. 233; *Houx v. Batteen,* 68 Mo. 84; *Lynde v. Williams,* 68 Mo. 360. (3) The plea of the statute of limitations against one under disability, at the time the cause of action accrued, will not avail, until such disability is removed. *Phillips v. Broughton,* 30 Mo. App. 148; *Sutton v. Casseleggi,* 77 Mo. 397; *Smith v. Ins. Co.,* 64 Mo. 330. (4) A trustee cannot hold adverse to the *cestui que trust* until he disavows the trust, and claims the fund as his own. *Goodwin v. Goodwin,* 69 Mo. 617; *Dillon v. Bates,* 39 Mo. 301. (5) Where land is entered in the name of an agent with means furnished by his principal under directions to enter the same in his name or the name of some designated person, the former will hold the title in trust for the party in whose name the same should have been entered. *Valle v. Bryan,* 19 Mo. 423; *Buren v. Buren,* 79 Mo. 538; *Sharp v. Berry,* 60 Mo. 575. (6) The payment of taxes alone will not support a claim of title under adverse possession. *Chapman v. Templeton,* 53 Mo. 463. (7) The statute of limitations does not begin to run, in favor of one holding land under a resulting

trust, until the issue of a·patent from the government. *Hammond v. Johnston*, 93 Mo. 198. (8) A party claim-·ing title to land cannot invoke in aid of such title the statements of his grantor, or one under whom he claims, to third parties, as to the character of such title or possession. *Morey v. Staley*, 54 Mo. 421; *Turner v. Belden*, 9 Mo. 797.

*W. C. Samuel, J. W. Samuel* and *C. H. Mansur* for defendant in error.

(1) The evidence is wholly insufficient to establish a resulting trust. The evidence to create a resulting trust must be clear, strong and unequivocal, and such as to leave no room for a reasonable doubt. A mere preponderance of evidence will not do. There should be no room for a reasonable doubt in the mind of the chancellor. *Johnson v. Quarles*, 46 Mo. 423; *Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73; *Forrester v. Scoville*, 51 Mo. 268; *Berry v. Hartzell*, 91 Mo. 136; *Gillespie v. Stone,* 70 Mo. 507; *Philpot v. Penn*, 91 Mo. 38. (2) The bar of the statute of ten years will control this case. *Buren v. Buren*, 79 Mo. 542; *Ricords v. Watkins*, 56 Mo. 553. (3) The long delay in making any attempt to enforce the alleged trust by plaintiffs amounts to gross laches. If there has been laches in prosecuting the claim, or long acquiescence in the operation of adverse rights, the court will refuse to interfere, though less than the statutory period has elapsed. *Kelly v. Hurt*, 74 Mo. 561; *Stevenson v. Saline Co.*, 65 Mo. 425; *Landrum v. Union Bank*, 63 Mo. 48; *Bliss v. Pritchard*, 67 Mo. 181; *Bradshaw v. Yates*, 67 Mo. 232; *Badger v. Badger*, 2 Wallace, 87; *Perkins v. Cartmill*, 42 Am. Dec. 757, notes and authorities cited. The attention of the court is specially called to the case of *Badger v. Badger*, for reasons upon which the doctrine of laches is based. (4) There is no allegation in the pleadings of any coverture or infancy,

or any other matter which avoids the statute of limitations. The exceptions to the statute not being in the pleadings, no evidence could be received in relation to them. *Keeton's Heirs v. Keeton's Adm'r*, 20 Mo. 542; *Badger v. Badger*, 2 Wallace, 95; *Lonsdale v. Smith*, 16 Otto, 391.

SHERWOOD, J.—By the institution of this equitable proceeding, the plaintiffs sought to charge the defendant, James May, as the trustee of a resulting trust, it being alleged that he entered the land in dispute in his own name, when it should have been entered in the name of his mother, the money being furnished for that purpose by his grandfather.

I. This case may be ruled on two points, either of which is decisive. *First*. The insufficiency of the testimony to establish a resulting trust, and, *second*, the statute of limitations.

The rule which prevails in this state, the general rule elsewhere upon the subject of resulting trusts, requires that in order to prove such a trust it must be established by testimony so clear, strong and unequivocal as to banish every reasonable doubt from the mind of the chancellor respecting the existence of such trust. This is the substance and effect of the language employed by the authorities, and by this court in numerous instances. *Johnson v. Quarles*, 46 Mo. 423; *Forrester v. Scoville*, 51 Mo. 263; *Ringo v. Richardson*, 53 Mo. 385; *Kennedy v. Kennedy*, 57 Mo. 73; *Gillespie v. Stone*, 70 Mo. 505; *Philpot v. Penn*, 91 Mo. 38; *Berry v. Hartzell*, 70 Mo. 132.

The testimony in this cause, it will be observed, is made up for the most part of the *verbal admissions* of the party against whom the resulting trust is sought to be established. Touching the subject of such admissions and the weight to be given them Greenleaf states: " The evidence consisting, as it does, in the mere repetition of

Burdett v. May.

oral statements is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him.' It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say." (1 Greenl. Ev., sec. 200.)

And those admissions were made when? Certainly prior to August 15, 1848, the date of the patent to James May, since which time he has occupied the premises, paid taxes, made improvements, bought and sold and managed the place as if it were his own. The fact that his father and family lived upon the place for a number of years along with James May argues nothing against his title, especially when considered in connection with the relationship between the parties and other facts in evidence, William May, a brother, worked for James May on the farm, and, for the years 1857 to 1859, was paid by James four hundred dollars, for his labor, and went away and remained away from the place ever since, with the exception of a visit to the place in 1865, when he took away, on a visit to Callaway county, his mother, whom he found living at James' house. None of the children claimed the place or set up any opposition to the title of James; and it is truly remarkable that William May should accept wages from his brother, if he knew he was as much entitled to the place as his brother. Indeed, he, as well as Graham and wife, have refused to join in the present suit, and therefore were made parties defendant.

It is so natural that parties having a right to property should assert it, should continue to live upon it after once having lived there, that the fact that they have done neither, must weigh heavily against the probability of the justness of their claim when asserted after so many years of silence, non-claim and abandonment.

None of the present claimants, so far as appears, lives on the property in dispute, or did so at the time of the mother's death, which occurred in 1865, her husband having died in 1863. And from testimony introduced on behalf of the real defendant, James May, it appears that his mother made in 1861, to one of her neighbors and intimate friends, the statement that the place was given to him as a recompense for staying with his parents and caring for them in their old age. And the testimony of William May goes to strengthen this view, ' because he says that on a difficulty springing up between himself and brother James in 1857, about working, that his mother told James that the place was *hers during her life,* etc. Now, if these statements by the mother were made, they being statements of the equitable owner then in possession, according to plaintiff's theory, they were competent testimony; and admitting that defendant, James May, did make the verbal admissions heretofore ascribed to him, they are not inconsistent with the statements of his mother. Besides, it must be borne in mind that the present proceedings were instituted over eighteen years after the death of the mother, who knew all about the transaction.

Courts of equity view with disfavor suits that are brought long after the transactions litigated have occurred, and long after death has sealed the lips of those familiar with occurrences so remote in point of time. *State ex rel. v. West,* 68 Mo. 229; *Lenox v. Harrison,* 88 Mo. 491, and cases cited. For these reasons, it must be held that the claim of plaintiffs has not been established in the manner demanded by the authorities heretofore quoted.

II. In addition thereto, the claim of the plaintiffs is barred by the statute of limitations. That statute, although it will not, as a rule, run against technical or. express trusts, yet it will do so from the time when the facts constituting a resulting trust are brought home to the *cestui que trust. Buren v. Buren,* 79 Mo. 538 and

cases cited. In the case at bar, as the cause of action accrued in 1848, Mrs. May, the mother, only became discovert in 1863, her disability prior to the latter date prevented the statute from running against her, inasmuch as the time specified in the proviso of section 3222 had not expired. That is to say, the twenty-four years mentioned in that proviso had not elapsed between the time the right or title of Mrs. May first descended or accrued to her and the period when she became discovert. Angell on Limit. [6 Ed.] sec. 477 and notes; *Hunt v. Wall*, 75 Pa. St. 413; *Warn v. Brown*, 102 Pa. St. 347; *Bradley v. Burgess*, 10 S. W. Rep. 5; *Medlock v. Suter*, 80 Ky. 101; *Mantle v. Beal*, 82 Ky. 122; *Valle v. Obenhouse*, 62 Mo. 81.

Consequently, whatever right or title she had originally remained at her husband's death. But, as the statute began to run in 1863 against her, no subsequent disability or existing disability of those who afterwards became her heirs could stop its course. The saving clause only extends to the person on whom the right of action first descends, or to whom the cause of action first accrues. Angell on Limitations, secs. 477, 478, *et seq.; Landes v. Perkins*, 12 Mo. 238; *Cunningham v. Snow*, 82 Mo. 587; *Williams v. Dongan*, 20 Mo. 186; *Swearingen v. Robertson*, 39 Wis. 462; *Bozeman v. Browning*, 31 Ark. 364; Wood on Limitations, sec. 251, *et seq.* and cases.

The heirs, then, of Mrs. May must be regarded as barred in the same length of time from the date when she became discovert, as she would, had she lived, to-wit, three years. On either of the grounds aforesaid, the judgment should be affirmed. RAY, C. J., BLACK and BRACE, JJ., concur in the first paragraph of this opinion; BARCLAY, J., concurs in a separate opinion.

SEPARATE OPINION.

BARCLAY, J.—Plaintiffs' claim is that money was furnished to defendant, James May, to enter the land

in question for his mother, Elizabeth May; that he made the entry in his own name, obtaining a patent accordingly, in 1848; and that Elizabeth and her husband, Gabriel May, together with the defendant, James, resided upon and improved the estate during their joint lives. Gabriel died in 1863, and Elizabeth in 1865, intestate.

Plaintiffs insist that a trust exists in their favor as her heirs on these facts. Viewing them from the standpoint most favorable to plaintiffs and giving them the benefit of every inference they suggest, it seems to me, nevertheless, that the statute of limitations is a bar to the relief they ask.

Their evidence disclosed that Elizabeth May, at least as early as 1857, perhaps earlier, was fully aware of the original transaction from which the trust is said to spring.

The statute of limitations in this state was undoubtedly intended to apply to proceedings for the enforcement of equitable, as well as of legal, rights, and every court exercising equity powers acts upon it, not merely by analogy, but in obedience to it as positive law.

It has been ruled that suits to assert equitable ownership of realty in the form of trusts must be brought within the period limited for other actions to recover estates in land, namely, within ten years from the time the cause of action accrues (*Hunter v. Hunter*, 50 Mo. 445), subject to the qualifications and exceptions contained in the limitation law.

As applied to implied trusts (whether resulting or constructive) the rule is that the statute ordinarily begins to run from the discovery (by the person entitled to sue) of the facts upon which equity will found the trust. If that person is then under disability the saving clause is applicable and the statute begins to run from removal of the disability in accordance with section 3222 (1879). In this case, as against the right of

Elizabeth May to have the trust declared, the limitation began in 1863 upon the termination of her coverture by the death of her husband.

Whether the trust here sought to be established be regarded as a resulting or a constructive one it would not become impressed upon the legal estate until some competent court so decreed, or until some other sufficient declaration of it. The fact that the owner of the legal title and the person entitled to enforce the equitable right resided together on the land, as in this case, would not defer the beginning of the limitation. Circumstances might exist in such a situation that would modify this rule by justifying the application of other principles of equity, but they have not been shown in this case.

The course of dealing between James and Elizabeth May, or his declarations regarding the land, subsequent to the original transaction, did not convert him into a trustee of an express trust. Express trusts in lands are within the statute of frauds and must, at least, be evidenced by some writing of the party sought to be charged as trustee. Implied trusts are not within the statute of frauds but are within the statute of limitations.

On the facts here shown it seems clear to me that Elizabeth May was bound, and those claiming in privity to her were bound, to begin the suit to declare the trust within the period of limitation after she became discovert.

The question is not whether the joint occupancy of the land by James and Elizabeth May can be considered an adverse possession on his part. The present is not an action of ejectment. It aims to have a trust declared as growing out of the facts already detailed. If both were yet in the joint occupation of the land the question still would be, at what date did the present cause of action accrue? When did Elizabeth's right to have a court of equity declare a trust arise? It seems to me the

answer must be, upon her discovery of the facts on which plaintiffs rely, and that as against her the limitation statute began to run from the removal of her disability thereafter. That was in 1863 and this suit was not begun until 1883.

If the statute began to run during the life of Elizabeth May it was not suspended at her death in 1865 by the disability of any of her heirs. (*Landes v. Perkins*, 12 Mo. 238.) It appears to me that the bar of the statute, relied upon by defendant, is effective, and that the judgment should, for that reason, be affirmed.