BARKSDALE *et al.*, *Appellants*, v. BROOKS.

**Equity**: PURCHASE WITH KNOWLEDGE OF FORMER SALE. A purchaser of school land who pays the purchase money but fails to get a patent from the county, will be entitled to the benefit of one issued to a person who buys at a subsequent sale of the same land with knowledge of the former sale. Equity will decree the title divested out of the patentee and vested in the first purchaser.

*Appeal from Dent Circuit Court.*—HON. V. B. HILL, Judge.

REVERSED.

*L. B. Woodside* for appellant.

*C. C. Bland* for respondent.

NAPTON, J.—This was an action of ejectment for the northwest quarter of the northwest quarter of section 16,

township 33, range 4 west, in Dent county. The defense set up was a special one, and in substance, was as follows: That prior to the organization of Dent county, which was in 1851, the land in controversy was in Shannon county; that about the year 1849 the county court of Shannon ordered a sale of the premises by the sheriff, and by virtue of said order the same was sold at the September term of the county court 1849, and that one E. Groves became the purchaser thereof at the price of $50; that the sale was approved by the court, and Groves' note, with security, was taken and approved by said court. This note was payable to the county of Shannon, to the use of township 33, &c. That Groves, after said purchase, took possession and continued in possession till his death, which occurred in 1851, and after his decease his heirs and legal represen- tatives continued in possession until the month of Novem- ber, 1865, when defendant, who had procured the title from said heirs, took possession, and has been in possession ever since. It is averred that after this purchase of Groves in 1849, he and his legal representatives paid the purchase money, with interest, whereby it is alleged they became the equitable owners of said land. The answer proceeds to state the details of the purchase in 1865 by defendant from Groves' heirs, by which it is alleged he became the equitable owner, although no deed was made by Groves dur- ing his life, but a quit-claim was made by his representa- tives or heirs. The answer then charges that plaintiff was present at the sale to Groves, and was present at and had full knowledge of the payment of the purchase money, but that after the organization of Dent county, by which said sixteenth section was thrown into Dent county, and before any certificate of said sale had been made to the county court of Dent county, the plaintiff appeared before the county court of Dent county and falsely and fraudulently represented to said court that the premises had not been sold, and by such representation procured an order for the sale of such premises to be made by said Dent county court,

which order the sheriff of Dent county executed, and at the sale under it the plaintiff himself became the purchaser, paid the purchase money and procured a patent from the State. It is, therefore, charged that said patent was procured by false and fraudulent representations, and as against defendants, was void. The prayer of the bill which is embodied in the answer, is that said patent be set aside, canceled and for naught held, and for such other and further relief as to the court may seem just, &c.

The replication is a denial of every allegation of the answer, but avers also affirmatively that when said land was in Shannon county there was a pretended sale, but without any proper order, and that the sale was never approved by the court, and was never certified as required by law; that Groves applied for a patent but failed to get one for the reasons above stated, and then abandoned the land. All the allegations in the answer concerning plaintiff's knowledge of the sale in Shannon county and plaintiff's fraudulent representations to the county court of Dent county, are expressly and repeatedly denied.

The testimony at the trial came mostly from the parties themselves and two or three neighbors. It appeared, beyond doubt, that in 1849 one E. Groves, from whom defendant derived his title, purchased this part of the sixteenth section at a public sale by the sheriff of Shannon county, and gave his note with one Holman as security, for $50. This sale was duly advertised, as well as the witnesses remember, by advertisements distributed as the law required. The certificate of the sheriff was produced at the trial stating these facts. There was evidence that the plaintiff Barksdale, was present at the sale and bought a part of this same section. Whether he was standing by at the precise time that Groves bought, the witness, who was at the sale and bought some land himself, was not able to say, but that he was at the sale and bid off a portion of the land advertised, and was a near neighbor of Groves, was proved. It appears that Groves died in 1851, that shortly

after, in the same year, Dent county was organized and included this section, and Groves' note was transferred to the county court of Dent county, and the defendant in this case, who was administrator of Groves' estate, paid off the note in 1856, which then amounted to about $85, and got possession of the note, but it was afterwards lost or destroyed. In 1858 the plaintiff bought eighty acres including the forty now in dispute, at a public sale ordered by the county court of Dent county, and got a patent from the State. That defendant has all the title which Groves acquired, is not disputed.  The evidence about possession and payment of taxes is conflicting.    The finding of the court upon these issues was for the defendant, and the judgment of the court is, "that plaintiff take nothing by his suit, and that defendant have judgment for his costs," &c., and it is further found by the court that the patent from the State of Missouri to plaintiff for the land sued for, to-wit: the northwest of northwest, &c., is as to defendant and those through whom he claims, fraudulent and void. "Wherefore it is considered and adjudged by the court that said patent to said lands, so far as affects defendant, be annulled, set aside and held for naught."

It may be assumed, as the result of the testimony in the case, that this land was bought in 1849 by Groves, from whom defendant's title is derived, and paid for in 1856, and that plaintiff knew of this purchase.  The embarrassments attending the formal completion of this title, by a patent from the State, we may conjecture were owing partly to the death of Groves, and partly to the transfer of the land from Shannon into Dent county, and we may add, to some extent to the fact which is disclosed in the evidence, that some years before the trial the court house in Shannon county was destroyed by fire, and all, or nearly all, the records and papers destroyed. Be this, however, as it may, the finding of the court, on the testimony, of these three facts, a purchase and payment by Groves, and a knowledge of such purchase by plaintiff, seems not an

unreasonable one. As these lands could not be sold for less than $1.25 per acre, and the plaintiff and Groves and one of the witnesses were all at the county seat of Shannon to buy, it is not at all probable that either was ignorant of the particular part of the section that each desired, especially as all three were near neighbors, living not further than a mile or two apart. Nine years after this, in 1858, the plaintiff and the witness, Holman, and perhaps others who had bought at this sale, not succeeding in getting patents from Jefferson City, and not having paid their notes, had no objection to having this sixteenth section again set up by the county court of Dent county. But Groves was dead, his administrator had paid off his note for the purchase money of the forty acres now in dispute, and the plaintiff at the second sale bought, not the forty by itself previously bought by Groves, but the west half of the quarter section which included it.

This was done with a full knowledge of the equitable title previously held by Groves. Under these circumstances the questions concerning possession and the payment of taxes cannot exercise any controlling weight, however decided. It appears certain that Groves, immediately after his purchase, did inclose and cultivate in connection with an adjoining field, some three or four acres of this forty. How long this inclosure lasted does not exactly appear. The plaintiff states that it was removed immediately after he bought this land, which was in 1858. The defendant says it was removed because of its liability to be washed down by rains. The defendant had inclosed and in cultivation some twenty or thirty acres of this land some three years before the trial. As to the payment of taxes, each party swears that he paid them, the defendant, that he paid them for twenty-five years, the plaintiff, that he had paid them ever since 1858, when he bought. It seems likely that both claimed the land and both handed it in to the assessor, and the assessor does not usually object if any mistakes are made against the tax-payer.

The prayer of the answer in this case, setting up an equitable title is, that the patent be declared void. This, perhaps, might not render a reversal necessary, as it was followed by the usual prayer for such other and further relief as to the court might seem proper. But the judgment is in the precise language of the prayer for relief, whereas it should have been that the legal title vested in the patentee be transferred to the equitable title of defendant. *Carman v. Johnson*, 20 Mo. 109. The judgment is, therefore reversed and the cause remanded, that this necessary correction may be made. The other judges concur.