PIKE et al. v. MARTINDALE et al., *Appellants*.

1. **Practice :** PARTIES. The objection that other persons should have been joined as plaintiffs must be raised by demurrer or answer and cannot be made for the first time on the trial.

2. ——— : WAIVER. Where, in a suit, in which the petition contains a count in equity seeking to set aside certain deeds, and to invest title in plaintiffs, and, also, a count in ejectment asking possession of the premises, the defendant fails to demand a jury and without objection permits the court to hear together the equity and law issues, he will be held to have waived a jury trial as to the law issue.

3. **Tax Deed :** NEW ASSESSMENT BOOK. A tax deed based on sale of land for taxes for 1874 held void, because no new assessment book was made out and the taxes were extended on the land assessment for the year 1872, which was not returned verified as required by law. *State ex rel. Harvey v. Cook*, 82 Mo. 185.

4. **Equity :** PURCHASERS WITH NOTICE. Courts of equity will grant relief to persons claiming land under defective conveyances and will enforce the same against the vendor, his heirs and subsequent purchasers with notice or knowledge of such conveyances.

5. ——— : ———. The evidence in this case held to support the finding of the trial court, that the subsequent purchasers took with notice of the prior equities.

6. **Practice in Supreme Court :** CONFLICT OF EVIDENCE : LAW AND EQUITY SUITS. Where there is a conflict of evidence on such question of notice, the finding of the jury, or trial court sitting as

a jury, is, in actions at law, conclusive, and in suits in equity, persuasive, upon the Supreme Court.

7. **Champerty.** A party will not be denied relief in a suit because of a champertous contract, until he asks aid of the court to enforce it.

8. **Laches.** Laches is an equitable defence determinable upon the particular facts and circumstances of the case.

9. ———. The action of the trial court in finding against the defence of laches in this case not disturbed.

10. **Answer, Admission in.** Where defendant in his answer admits he is in actual possession of the premises sued for and claims to hold the same for value and without notice, he will be bound thereby, and will not be allowed to claim differently on the trial of the question of rents and profits.

11. **Land :** COMPENSATION FOR IMPROVEMENTS. The right of one to compensation for improvements made on land whilst in possession by himself or his tenant, depends on whether they were made in good faith and before notice of the adverse title.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*R. S. Musser* for appellants.

(1) Whatever interest or right W. S. Pike may have had in the premises, it was simply that of a trustee for the benefit of the banking firm of Pike Brothers & Company. Therefore, plaintiffs have no interest in the subject matter of this suit as heirs at law of W. S. Pike, and the decree rendered by the circuit court was not warranted by the evidence and should be reversed. (2) The burden of proof was on plaintiffs to show that defendant, Cook, had notice, at least sufficient to put him on inquiry, of the pretended conveyance by Boissat to Pike, in September, 1873, or of the trust. The evidence of such notice is insufficient, and the decree in that respect is not supported by the evidence. (3) The finding of the court, that defendant, Cook, unlawfully with-

holds from plaintiffs the possession of said lands, and that the monthly value of the rents and profits of said premises is eight and one-third dollars, and that the plaintiffs have been damaged by such detention in the sum of $212.30 (less the credit for taxes), and the rendering judgment against Cook for possession, and the residue of the said damages, $108.30, and damages for the monthly rents and profits of said premises from the date of judgment until restitution thereof be made at the rate of eight and one-third dollars per month, is unwarranted, and without a particle of evidence justifying the finding of the court. The only evidence introduced by the plaintiffs on this subject was that of defendant, Cook, whom they made their own witness, and his testimony does not warrant the finding and judgment. (4) The finding of the court, that the land described in the tax deed made by J. L. Bennett, collector, was not sold to said Cook, nor to any one at public sale, is unwarranted, and is not a conclusion from any testimony preserved in the bill of exceptions. Acts 1872, pp. 125 and 131. (5) The court erred in sustaining the motion to strike out that part of defendant Cook's answer wherein he set up the alleged champertous agreement between W. W. Caldwell and plaintiffs. *Duke v. Harper*, 66 Mo. 55; Story's Eq., sec. 1048; *Martin v. Veeder*, 20 Wis. 475; *Bayard v. McLane*, 3 Harrington, 212. Where it clearly appears that the suit was commenced, and is being prosecuted, under a champertous agreement, the court should on its own motion dismiss it. *Greenman v. Copee*, 61 Ind. 205; *Barker v. Barker*, 14 Wis. 142; *Allard v. Lamirande*, 29 Wis. 502; *Webb v. Armstrong,* 5 Humph. 379; *Hayney v. Coyne*, 10 Heisk. [Tenn.] 339; *Jenkins v. Bradford*, 59 Ala. 400. (6) Plaintiffs' petition contains a count in equity and a count at law, and there should have been separate trials and separate judgments. The court heard and tried both counts together. "Where a count at law and a count in equity are in-

cluded in the same petition, they require separate trials
and separate judgments." *Crowe v. Peters,* 63 Mo. 429 ;
*Jones v. Moore,* 42 Mo. 420 ; *Henderson v. Dickey,* 50
Mo. 160.    The court erred in trying the law issue, in
determining the damages and monthly value of the
premises.    This is the province of a jury, and a consti-
tutional right of defendants, unless a jury was waived in
the manner prescribed in the statutes.    R. S., sec. 3600,
3602.    (7) The plaintiffs' action is barred by laches.
*Landrum v. Bank,* 63 Mo. 48 ; Story's Eq., sec. 756.
Laches need not be pleaded.    4 Otto, 811.

*Strong & Mosman, I. R. Williams* and *W. W. Cald-
well* for respondents.

(1) Appellants' tax deed was void.    *State ex rel.
Harvey v. Cook,* 82 Mo. 185 ; *Abbott v. Lindenbower,* 42
Mo. 152 ; Cooley on Taxation, 259.    (2) Courts of equity
will interfere for the relief of a vendee who has taken a
defective conveyance, and compel the vendor, his heirs,
and all other persons claiming under him, to make good
the conveyance.    *Barksdale v. Brooks,* 70 Mo. 197 ;
2 Sug. on Vend. 1022 ; 5 Johns. Ch. 224, and cas. cit.;
*Mastin v. Halley,* 61 Mo. 196 ; *McQuie v. Peay,* 58 Mo.
56 ; *Dunn v. Raley,* 58 Mo. 134 ; *Carter v. Holman,* 60
Mo. 498 ; *Blackburn v. Tweedie,* 60 Mo. 505 ; *Atkinson v.
Dixon,* 70 Mo. 381 ; *Martin v. Jones,* 72 Mo. 23.    (3) The
members of the late firm of Pike Brothers & Company
are not necessary parties to the suit.    Besides, the ob-
jection as to defect of parties can only be taken by
demurrer, or answer, and cannot be raised for the first
time on the trial.    R. S. 1879, sec. 3519 ; *Kellogg v.
Malin,* 62 Mo. 429 ; *Butler v. Lawson,* 72 Mo. 247.
(4) The decree in this case is right.    Courts of equity, in
such cases, have power to do full justice between the
parties, adjudicate all the equities, such as rents, taxes,
etc., and issue writs of restitution.    This power is con-

ferred by statute (R. S., sec. 3693), and is a common law right as well. *Henderson v. Dickey*, 50 Mo. 161 ; *Kershaw v. Thompson*, 4 Johns. Ch. 609 ; *Hutcherson v. Briscoe*, 77 Mo. 373 ; *Bibb v. Means*, 61 Mo. 284 ; *Harris v. Haley*, 61 Mo. 462 ; *Cathcart v. Robinson*, 5 Pet. 263. The objection of appellants that the court erred in trying the law issues, and determining the damages and monthly value of the premises, comes too late. They should have raised it at the trial and saved it in their bill of exceptions. They appeared and consented that both matters should be heard together, and by that action waived the right of trial by jury. *Jones v. Moore*, 42 Mo. 419. (5) The evidence shows defendants' knowledge of the claim of plaintiffs and their ancestors. (6) The objection of the staleness of plaintiffs' claim is not well taken. (7) The question of champerty cannot be raised in this case by defendants. *Boone v. Child*, 10 Pet. 177 ; *McIntyre v. Thompson*, 10 Fed. Rep. 532 ; *Railroad v. Johnson*, 29 Kan. 229 ; *Whitney v. Kirtland*, 27 N. J. Eq.; *Small v. Railroad*, 55 Ia. 584; *Bent v. Priest*, 10 Mo. App. 546 ; s. c., 86 Mo. 475.

RAY, J.—This suit was instituted by plaintiffs against defendants for the purpose of cancelling certain deeds, and vesting in plaintiffs the legal title to certain lands, described therein, and situate in Andrew county, Missouri. There is a separate count in the amended petition which contains the ordinary allegations in ejectment proceedings.

The land was patented by the United States to Eugene R. Boissat, of Alexandria, Louisiana, under whom the plaintiffs and defendant, Cook, claim title ; the other defendants disclaim any interest in the proceedings. E. R. Boissat, the original owner of the land in question, paid no taxes upon it after the beginning of the war, and it remained unoccupied. In September, 1873, the said Boissat executed and delivered

Pike v. Martindale.

to William S. Pike, of New Orleans, Louisiana, the instrument under which the plaintiffs claim title, as heirs at law of said William S. Pike, which said instrument was neither sealed, acknowledged, nor recorded. It may be stated in this connection, that defendant further claims that said deed was intended as a security for a debt due from said Boissat to the firm of Pike Brothers & Company, a banking firm in New Orleans. In December, 1877, a tax deed was executed by the collector of Andrew county to the defendant, Cook, based on a sale of the land for taxes, made in the year 1875, for the taxes of 1874. As to this deed, plaintiffs say that the same is void, for want of substantial compliance with the revenue law ; that said land was never sold at the tax sale, but was forfeited to the state, and that defendant's tax deed was fraudulently obtained. In March, 1877, there was filed in the office of the recorder of deeds of Andrew county, a certain instrument, purporting to be a deed from Eugene R. *Boissuit*, of Arkansas, to John Inglehart, of St. Louis, Missouri, under which neither of the parties to this action claim, and which both plaintiffs and defendants charge is a forgery. In September, 1879, Eugene R. Boissat and wife, Virginia, executed and delivered to the defendant, Cook, a conveyance containing the statutory covenants for title implied by the words "grant, bargain, and sell," which said deed was, on the eleventh day of September, 1879, duly recorded in the land records of Andrew county.

In their amended petition plaintiffs charge, in substance, that they are the heirs at law of W. S. Pike, who died in New Orleans, in 1875 ; that they are the equitable owners of the land in question, by virtue of a deed, made on the ———— day of September, 1873, by Eugene R. Boissat, to their ancestor, William S. Pike; *that for the reason that said deed was neither*

*acknowledged, nor sealed, they were unable to have it recorded;* that the defendants, each and all of *them, had full* notice and knowledge thereof, and of the ownership, etc., of the plaintiffs, and having such knowledge, conspired and confederated together to procure from said Eugene R. Boissat, or some person who fraudulently and falsely personated him, a deed conveying said land ; that, in pursuance of said conspiracy, the defendant, Martindale, procured to be executed and filed for record about March 9, 1877, an instrument purporting to be a deed from Eugene R. Boissat to John Inglehart, which deed was a forgery, etc.; that defendants, with design to further becloud plaintiffs' title, fraudulently procured to be executed and delivered to defendant, Cook, a deed from Joseph L. Bennett, collector of the revenue ; that the recitals in said tax deed were untrue, etc. ; that the land was not assessed, returned delinquent, nor was any judgment rendered against the same, nor the land sold as recited, but that, after the said lands were declared forfeited to the state for want of bidders, defendant, Martindale, representing his co-defendants, and in furtherance of said fraudulent designs, etc., did, in his own hand-writing, falsely write upon the tax book and collector's lists for sale, and opposite the descriptions of said lands, a memorandum to the effect that defendant, Cook, was a bidder for the purchase of said land, and, thereby, procured and caused said collector to execute to said Cook said tax deed, etc.; that, thereafter, and with full knowledge of all the aforesaid facts, and with the design to further complicate plaintiffs' title, etc., defendant, Martindale, on the fourth day of September, 1879, procured from said Eugene R. Boissat, grantor of plaintiffs' ancestor, an instrument purporting to be a warranty deed duly signed, sealed, and acknowledged, conveying said land to defendant, Cook, etc.; that said deed was voluntary, and without consideration, etc.; that said Martindale,

in order to procure said conveyance from said Boissat to said Cook, knowingly and falsely represented that the words "grant, bargain, and sell," which were in said deed, were, in legal effect, under the laws of this state, equivalent to a deed of quit-claim only ; that said Cook is not entitled to claim title under said deed as an innocent purchaser and that said deed ought to be cancelled. As before stated, the second count is in the usual form prescribed by the statute in actions of ejectment.

The separate answer filed by the defendant, Martindale, denies each and every allegation in plaintiffs' petition, and states that he has no interest in the land in controversy, and asks, to be dismissed with costs. The separate answer of the defendant, King, is the same.

The separate answer of defendant, Cook, denies each and every allegation in plaintiffs' petition, except those admitted ; states that he is the owner, and in actual possession, of the land, for valuable consideration, and without any actual or constructive notice of any legal or equitable title in plaintiffs ; that the first information that he had that plaintiffs claimed title to said land was when he was served with summons in this action ; that he received actual possession of said land about January 1, 1878, and is still in lawful possession of the same ; that he has paid taxes on the same amounting to one hundred and twenty-five dollars, and made permanent improvements, and expended money thereon, to the amount of three hundred dollars ; admits that there was filed for record, and recorded in the recorder's office in Andrew county, on March 9, 1877, a false, forged, and fraudulent deed, purporting to have been made by one Eugene R. Boissoit, to John Inglehart ; denies that he had any knowledge of said forged deed until the date it was, placed of record ; avers that plaintiffs, their agents, and attorneys, conspired and confederated together for the purpose of procuring paper title to said lands, and to defraud this defendant, procured and caused said

fraudulent deed to be made and filed for record; that, on the twenty-fourth day of December, 1877, by virtue of a purchase made by him at a tax sale made in Andrew county by the collector of said county, the collector made, executed, and delivered to him, a deed for said lands, and that said deed was filed for record December 24, 1877; that, on the fourth day of September, 1879, Eugene R. Boissat made a warranty deed conveying said lands to him for a valuable consideration; that he had no notice, actual or constructive, of the alleged equitable or legal title in the plaintiffs, or their ancestors, at the time he received said deed, and paid the consideration therefor; that this cause was instituted, and is prosecuted and maintained by, and in pursuance of, an unlawful and champertous agreement, made and entered into by and between plaintiffs and W. W. Caldwell, the senior counsel for the plaintiffs, whereby said Caldwell agreed with plaintiffs to prosecute and maintain said suit, in their name, for one-half the land recovered, and to pay all costs and expenses incidental to said suit, whether or not plaintiffs obtain a decree or judgment for said land, and to charge nothing for his services, if the land be not recovered; that plaintiffs had knowledge of the defendant's title to said land from and after the said tax sale; that they refused to pay any taxes on said land, or set up any title to the same, until after said unlawful and champertous agreement for the prosecution of this action was entered into.

Plaintiffs moved to strike out that part of the separate answer of defendant, Cook, which related to the alleged champertous agreement between the said plaintiffs and W. W. Caldwell, the senior counsel in the case, and also that portion which alleges that they refused to pay any taxes on said land, or set up any title to same, until after said agreement was entered into. Which motion was sustained by the court, and the defendant excepted, and this action of the court is

assigned as error. The reply of plaintiffs to the separate answer of defendant, Cook, was the general denial. Material portions of the evidence, and the various deeds and instruments of writing in evidence, with the objections thereto, will be considered in the course of this opinion. Upon the trial of the cause by the court, without the interposition of a jury, the issues were found for plaintiffs, and decree rendered granting the relief prayed for, and cancelling said deeds, and divesting defendants of all interest in the lands in suit, and vesting title thereto in plaintiffs. Damages were also assessed for rents and profits, to which objection is made, and which will be considered hereafter.

The first objection urged by defendants, and which we will consider, is, that the action is not brought in the name of the real parties in interest, as required by the statute, for the reason that the evidence shows that the deed from said Boissat to W. S. Pike was intended merely as a security for a debt due the banking firm of Pike Brothers & Company, with which firm said W. S. Pike, the ancestor of these plaintiffs, was connected, being the senior member thereof. The facts seem to be about as follows : Said Boissat had, at some time prior to the date of the deed, become indebted to said firm of bankers for moneys collected for the bank, amounting to $1495.33, and which he had failed to account for. After some negotiations, said Boissat offered to give his note for said sum, with a mortgage on other property as collateral security, and also to convey these Missouri lands in part payment of this indebtedness. This proposition was accepted by the attorney acting as the agent of said Pike, who directed that the deed should be made to him. The price agreed on for the Missouri lands conveyed was three hundred and sixty dollars, which amount was to be credited on the said claim which Boissat owed Pike Brothers & Company, and the deed in question was

thereupon signed and delivered. This deed, on its face, is not a mortgage, but an attempt, on the part of said Boissat, to execute an absolute conveyance of the land described. The evidence shows that the land was to be taken as an absolute payment *pro tanto* on the indebtedness of said Boissat to said firm, and that said indebtedness should be extinguished in the amount of three hundred and sixty dollars, which was the agreed price of the land, and which sum was credited on the said note. Whether or not the balance of said claim was ever collected or not, is, we think, immaterial, and the inquiry as to that irrelevant, the Missouri lands being paid for by the credit on the note to the amount of their agreed valuation. The deed is made, it will be observed, directly and solely to said Pike. Whether there was, or not, any settlement of partnership affairs between· said Pike and his co-partners, these defendants cannot complain in this action. That is a matter, we think, between said partners alone, to which defendants are entire strangers, there being no privity between defendants and said firm, or any of them. *Williams v. McGuire*, 60 Mo. 254. And, further, if it be true that the other members of said firm were proper and necessary parties to the suit, the objection should have been raised by demurrer, or answer, which was not done, and cannot be raised for the first time upon the trial. R. S., sec. 3519 ; *Kellogg v. Malin*, 62 Mo. 429 ; *Butler v. Lawson*, 72 Mo. 247.

The objection that the court erred in determining the law issue and fixing the damages and rents and profits, was not taken on the trial, nor exception then saved. Defendants did not demand a jury, but permitted the court without objection to hear the law issue, as well as those in ejectment, together, and must be held to have thereby waived a jury trial of the law issue. *Jones v. Moore*, 42 Mo. 419.

As we have seen, defendants, Martindale and King,

disclaim all interest in the land. Defendant, Cook, claims title to the same, first under a tax deed executed in December, 1877, based on a sale of the land for taxes in the year 1875 for the taxes of 1874. The validity of the tax deed to pass the title was successfully assailed at the trial, and the court's ruling and finding in this behalf is presented here as error for which the judgment should be reversed. The court in its said decree finds that the land in controversy was not sold to said Cook or any one at such public tax sale, as recited in said tax deed. Allen, who was collecter at the time the certificate of purchase was issued to defendant, Cook, and signed the same as such, testified (against the objection of defendant that he could not be permitted to contradict his official act) that the land in question was forfeited to the state for want of bidders during the first or second day of the sales made in October, 1875, and that he did not offer the land at public sale again that year. He further testifies that the next day, or second day thereafter, and while the public sale of delinquent lands was in progress, and before the clerk and collector had made return of the special execution, defendant, Martindale, acting for defendant, Cook, and with the knowledge and consent of the collector and of the county clerk, wrote the name of defendant, Cook, opposite the description of the land, and under the head "to whom sold," and that upon payment of the taxes by Cook the certificate of purchase was issued to him. His evidence, if competent, shows that it was the custom of these officials at that time when parties would come in and pay the money, to let them select of the lands thus forfeited to the state for want of bidders at the public sale. If the fact thus shown by the testimony of the collector appeared upon the face of the tax deed, the deed would be void upon its face—as was declared by this court in *Mason v. Crowder*, 85 Mo. 531. But as it is made to appear by independent and extrinsic parol

testimony of the collector himself, the objection to the competency and sufficiency of his evidence to contradict and invalidate his official certificate presents a question, which, from the view we have taken of this case, need not here be decided, since there are other sufficient grounds upon which the court's action, in holding the tax deed void, may be sustained.

The tax deed made in 1877, is based, as already stated, on sale of land for the taxes of the year 1874. The evidence shows that there was no new assessment book made out for the taxes of 1874, but that the taxes of said year, as well as those for the year 1873, were extended on the land assessment for the year 1872, which was not returned verified as required by law. This same assessment of lands in said Andrew county for taxes for the years 1873 and 1874 has previously been before this court and declared invalid in an action by the collector of said county against this defendant. See *State ex rel. Harvey v. Cook*, 82 Mo. 185. The reasonings and conclusions reached in that case, involving the same question now before us, and in which this defendant successfully resisted the collection of similar taxes, are still satisfactory to us. Upon the authority of that case the tax deed must be held void.

Defendant, Cook, also claims under said deed of general warranty from said Boissat and wife, dated and recorded in September, 1879, which is in regular form and conveys the legal title, as against the prior deed of Boissat to Pike, the ancestor of plaintiffs, which was not under seal, acknowledged, or recorded, unless the evidence shows that defendant took with knowledge or notice of plaintiffs' said interest and claim in the land. Courts of equity will grant relief to parties claiming under defective conveyances and enforce the same against the vendor, his heirs, and subsequent purchasers from him or them with notice or knowledge. *Barksdale v. Brooks*, 70 Mo. 197; *Martin v. Jones*, 72 Mo. 23;

*Blackburn v. Tweedie*, 60 Mo. 505; *Vaughn v. Tracy*, 22 Mo. 415; *Musick v. Barney*, 49 Mo. 458.

The evidence tends to show that both of said defendants, King and Martindale, were informed and advised of the claim of parties in Louisiana represented by W. W. Caldwell. Said King was, at the dates mentioned, in the real estate business, and made and furnished abstracts of titles to land in Andrew county. Said Martindale, who was a lawyer, spent most of his time about the court house and in the real estate office of said King & Company. In March, 1877, a forged deed, purporting to be from Boissat the original patentee, bearing date January, 1864, and conveying the land to one Inglehart, was sent by mail to the recorder of deeds of said Andrew county with a request, in a letter transmitted therewith, to return the same to Henry Truesdale at Kansas City. In April following of that year, a deed, purporting to be from said Ingehart, with name of grantee in blank, was sent to one Childs, cashier of the Farmers' Bank at Savannah, with a letter signed by said Truesdale, directing the delivery thereof to Geo. King & Company, upon the payment of one hundred dollars. The land thus offered for one hundred dollars, was, as the evidence in the case shows, worth at that time ten dollars or $12.50 per acre, or twelve hundred or fifteen hundred dollars for the one hundred and twenty acre tract. The terms of sale in said letter are also otherwise unusual and extraordinary. Said Truesdale was, as afterwards discovered, and as is shown by the testimony of Speers, the chief of police of Kansas City, and of police commissioner Craig and others, one W. H. Cone, who was a notorious swindler and forger.

I. R. Caldwell testifies that King offered to sell him the land for four dollars per acre, and informed him of the deed at the bank. Said Caldwell, upon examination, pointed out that there was no grantee named in the deed. Whereupon King proposed to get a deed with Caldwell's

name in it; which said I. R. Caldwell, in the meantime, called on W. W. Caldwell, for the purpose of borrowing some of the purchase money, and was then informed by him that the land belonged to heirs he (W. W. Caldwell) represented, and that he believed the deed to be a forgery. This information I. R. Caldwell imparted to King, and declined to go on with the land trade. W. S. Challocomb testifies that on another occasion, when he and Caldwell and King were present, said W. W. Caldwell mentioned the interest and claim on the land by parties in Louisiana, which he represented, and that King said, during this talk, that the little represented by Caldwell was of no account. There is evidence that, on one or more occasions, Martindale said that the little Caldwell represented could not be read in evidence in the courts of this state, and that both King and Martindale expressed doubts about the little Caldwell represented. W. W. Caldwell testifies that he told Martindale, in the summer of 1877, that he was representing the parties who owned the land in controversy.

These facts are sufficient to show that said King and Martindale were, each of them, well advised as to the existence of said claim on the land by the parties represented by said Caldwell. So far as they are concerned, there is not much, if any, controversy as to the tendency of the evidence upon this question of knowledge, but it is earnestly insisted that there is an entire failure of evidence, in this behalf, as to defendant, Cook. The relations, however, between said Martindale and said King and defendant, Cook, were intimate and friendly; they were, in fact, both sons-in-law of Cook, and all lived in the town of Savannah, in said county. A notorious and bitter quarrel was going on for some time between said Caldwell, on the one side, and said Martindale and King on the other, about these lands, a number of witnesses saying it was the "town talk." Caldwell was openly charging them with being disreputably connected

with the forged deeds, and insinuations and charges to the same effect were made by Martindale, and, perhaps, also, by King, against Caldwell. About the time the tax deed was made, which was in December, 1877, Martindale told Cook, as Cook testifies, that there was a bogus deed of record, and stated at this time that Caldwell was trying to steal the land. The evidence further shows that Martindale acted in behalf of defendant, Cook, in the several transactions Cook had about the land. In 1875, Martindale was at the sale of the land for taxes, and acted at that time in Cook's behalf in effecting the purchase of the lands. · The entry of Cook's name under the head "to whom sold," and opposite the description of the land, was in Martindale's handwriting, as was, also, the said tax deed.

Martindale, also, began the correspondence with Boissat, in 1879, in regard to the purchase of the land by Cook, and obtained said deed from him and his wife, under which said Cook, also, claims the patent title. This deed, which was made not long after the decisions by this court to the effect that a grantee in a quit-claim deed takes with notice (62 Mo. 147, 473, 491), does not contain the usual covenants of warranty, in the ordinary blank form for deed, but contained the words, "grant, bargain, and sell," their equivalent, under our statute. Cook says Martindale told him that Boissat wanted one hundred dollars for a quit-claim deed, but he thought a quit-claim deed was of no account, and that he authorized Martindale to give fifty dollars for a warranty deed, thinking it would cut off all sources of controversy. Notwithstanding all this, however, Cook, as he testifies himself, never made any investigation of the title, never inquired of Caldwell, or of any one, about the ownership of the land, except said Martindale, his son-in-law and agent, through whom both of his said attempts to acquire land were made. Cook further testifies that, shortly after he obtained said deed from Boissat and

wife, he conveyed forty acres of the land to Martindale without any consideration therefor. There are other circumstances in the evidence bearing upon this question, but it is, we think, unnecessary to set out the evidence at greater length. It manifestly tends to sustain the findings of the trial court in this behalf, to charge defendants with notice of claim of title on the land by the parties represented by Caldwell and who were these plaintiffs.

The evidence for plaintiffs, it is true, is contradicted by the testimony given for defendants. Both defendants, Cook and King, denied all notice or knowledge of the equitable rights of plaintiffs, or their ancestor, in the land in controversy, prior to the commencement of this action. Said Martindale did not testify in the case. There was, in other words, a conflict of evidence upon this question. Where this is so, the conclusion and finding of the jury, or the trial court sitting as a jury, in actions at law, is binding, and, in equitable actions, persuasive, upon this court, and, under the evidence in this case, we will not interfere. *Baum v. Freyrear*, 85 Mo. 151.

Defendant also complains of the court's action in sustaining the motion of plaintiffs to strike out that part of defendant Cook's separate answer, wherein he sets up a champertous agreement between W. W. Caldwell, the senior counsel, and plaintiffs, and in excluding the evidence offered upon the trial in that behalf. The precise question thus involved has recently been fully considered by this court in the case of *Bent v. Priest*, 86 Mo. 475. Black, J., speaking for this court, says: "Unless the plaintiff's title, by which he seeks to enforce a right, is infected by a champertous contract, we see no reason why the suit may not proceed, though such a contract may exist as between the plaintiff and his attorney. It is time enough to turn a party out of court when he asks the aid of a court to enforce such a

contract." This authority is decisive of the same question now before us in the case at bar.

Nor do we think the objection, that plaintiffs are barred by laches on their part, is well taken. Laches is a question of fact on the evidence, an equitable defence determinable by the particular facts and circumstances of the case. In some cases, a comparatively short period will bar the claim, whilst in others, much greater length of time will not have that effect. In the case at bar the plaintiffs and their said ancestor were all residents of the state of Louisiana. Said Pike obtained his said deed from Boissat in the year 1873, and seems to have begun correspondence immediately with Caldwell about the land. Caldwell informed him that his said conveyance was defective and advised him to get a new deed. Boissat, it seems, refused to give this, and negotiations in this behalf were, it seems, still pending between them when Pike died in 1875. This deed, and other papers relating to the Missouri lands, was not found, it seems, for a year or two after Pike's death. It came into the possession of Bell in the year 1879, through one of the heirs of Pike. Said Bell, then acting in the interest of the estate, renewed the correspondence with Caldwell, and sent him the deed in 1880, with authority and instructions to bring the suit. This state of facts does not, we think, show staleness in the demand, or laches on the part of these heirs, requiring us to disturb the finding of the trial court upon this ground.

A further objection is made to the finding of the court as to the damages, rents, and profits, which in this behalf was, "that defendant, Wm. Cook, has paid taxes on said land, which, with interest, penalties, and costs, amount to $104.29. That it is here now admitted, and in open court agreed, that forty acres of said land is in cultivation since January 1, 1881, and that since said date, and now, the court finds the monthly value of the

rents and profits of said premises is eight and one-third dollars, and that plaintiffs have been damaged by such detention in the sum of $212.30, and now here plaintiffs enter credit upon said damages on account of said taxes in the sum of $104.29." Cook testified upon the trial that, long before the date of the suit, he had conveyed the forty acre tract to Martindale, and, defendant, King, testified that Martindale had sold the same to him and that he had sold to W. P. King, having the deed made direct from Martindale to said W. P. King. Cook, also, testified that he had given a lease of the eighty acre tract to one Clasby, for a period of five years, from January 1, 1880, in consideration of Clasby's putting the tract under a good osage orange fence. Said alleged deeds above mentioned do not appear to have been put on record, and if they existed they were not read or offered in evidence—nor does it appear whether said lease was in writing, or verbal. If in writing it was not offered in evidence. Whether said Cook could maintain an action for the possession against said Clasby is, we think, wholly immaterial in this action.

Defendant, Cook, admits in his separate answer that he is in the actual possession of the premises sued for, and claims in said answer to hold the same as owner for value and without notice. He is bound by his said answer. If true he can stop the rent by restoring the possession which he admits he has. In his said answer Cook also avers that he has paid the taxes and made the permanent improvements thereon. His right to compensation for the improvements made on the land whilst in possession by himself or his tenant, depends upon the fact whether the same were made in good faith and before notice of the adverse title of plaintiffs. And upon that issue the finding was against him. For these reasons, therefore, we think said objections to the decree in this behalf are not well taken

Finding no error in the record, the judgment and decree of the trial court is, therefore, affirmed. All concur, except Henry, C. J., not sitting.