The opinion of the court was delivered by
Tod, J.
In this action of ejectment, Sarah Salter, the real plaintiff below, anil defendant in error, demanded oí Mackentile, an undivided fourth part of a house and lot of ground in the city of Philadelphia, and obtained therefor a verdict and judgment. In the judgment thus far, no error is complained of. . But the plaintiff also demanded in the same writ, not an undivided part, but the whole, of a strip of ground two and and a half feet wide, part of a lot upon which a frame, dwelling-house was erected. Whether the judgment obtained by the plaintiff for this1 part of the property in dispute is valid, is the question.
The title and claim on both sides, appear thus: — In 1781, the ground in dispute, and the ground adjoining it, being public property, the supreme executive council laid out a part between Sixth and Seventh Streets, into lots twenty-four feet, wide, fronting on Pine Street on the north. In 1784, two of these lots ¿djoining each other, became the property of Anthony Lautier; who, thus having a front of forty-eight feet, made a new subdivion of his own into three building lots, two. of them fifteen feet in front, the eastern lot eighteen feet in front, including an alley of three feet, to extend a certain distance back, apparently for the accommodation of the eastern and middle lots. He erected a dwelling-house,on each lot, the western house of brick, the middle one also brick, and on the eastern lot, a part of which is the ground in dispute, a frame building.
Anthony Lautier then died intestate, leaving two children, Mary and Benjamin, who agreed to divide the premises; and, by deed of partition, dated the 26th of November, 1799, did divide the property between them. The deed of partition was duly recorded. With exceeding minuteness, it gives not only the length and breadth, *105 but the boundaries of each lot on all sides. It assigns the westerly brick house and lot, also the frame house and lot to Mary. To Benjamin', the middle house and lot, and the use of the alley, in these words: “ And that he, the said Benjamin Lautier, and his heirs, shall have, hold, and enjoy, all that certain two story brick messuage and tenement, and lot or piece of ground, being the middle part of the first above described large lot, containing in front or breadth on the said Pine Street, fifteen feet, and extending in length or depth southward, one hundred feet; bounded on the north by the said Pine Street, on the east partly by the said three feet alley, and partly by the said last described lot, on the south by other ground late of the said White Matlack, and on the west by the said brick messuage and lot herein before assigned to Mary Rogiay, together with the common use and privilege of the said three feet alley,” &e.
The whole of this property soon went oat of .the hands of the children of Anthony Lautier. Mackentile, the defendant, claims to hold the frame house under a purchase from the heirs of Mary. Benjamin Lautier became in debt, and the sheriff sold his middle brick house and lot to Salter. And, on an execution against Mary, the sheriff sold her western brick house and lot to John Gest.
It was a fact proved in the cause, and from that fact the dispute arises, that in laying out the ground originally, a mistake was committed, by whom is not said, of two feet six inches; and Anthony Lautier’s purchase was located through that mistake, too near Seventh Street by so much. But it may be material to consider that the two and a half feet of bad title is not, by any means, the ground now in question, but altogether on the other side. The ground sued for, is part of the outside lot nearest Sixth Street. The interference was on the outside edge of the outside lot nearest Seventh Street. The mistake was discovered, as is recited in one of the deeds, “ by James Pearson, one of the city surveyors, on the 18th of June, 1799, by accurate measurement and plot recorded in Deed Book No. 77, page 167.”
Now Mrs. Salter, the plaintiff below, the owner of the middle house, whose deed from the sheriff recites the indenture of partition, and describes the property as it is described in the partitions, bounding her expressly upon the three feet alley, sues the defendant, the owner of the frame house, and demands two and a half feet, including so much of the alley, one of the boundaries in her own deed, leaving a remnant of the alley, of six inches, to the defendant.
The claim of the plaintiff below appears to be supported by a process of reasoning as follows: — 1. The western brick house, now belonging to John Gest, was built by encroachment two and a half feet on the ground of another, who would have a right to take the ground and demolish the wall; and though there is no proof that the western building ever actually did lose any ground by the mis *106 take, that makes no difference as to the principle. 2. Gest losing, or.being liable to lose, the .wall of his house by the mistake, the law permits him to make up his fifteen feet out of the middle'lot, and to indemnify himself by taking so much of the wall of the middle house. And, 3. The two and a half feet of bad title being thus lifted from its place and cast by Gest upon Salter, Salter, in her turn, ■ has the same fight to-throw it upon Mackentile, and so on: That is to say, if 1 understand: the exact grounds of the claim, if Jlnthony Lautier, instead of forty-eight feet only, Had been able to purchase all the ground down to Sixth Street, had laid it out in lots of fifteen feet, covered them with houses, and sold them to separate purchasers, and then the, mistake of two and á half feet at thé start had been discovered, there would be a sort of contagion in the business, the defect and mistake would not be local and confined to its own place, but would be set afloat by the law, and shifted from one to another by a string of ejectments, until it had gone through every house to the. end of the block, leaving-all the owners but the first and the last, exactly as they were before this correction of errors, except the motion of thirty inches to the east, and the loss of one wall to each house, and except two law suits upon each owner, on the left hand as defendant, and the other ■ on the right hand, as plaintiff.
It strikes me this doctrine would be1 exeéedingly troublesome in practice. Is it the law? In a pase of such frequent occurrence there ought to bé no doubt — I think there is none.
If Ji. Lautier, himself, had disposed of the property in question, it will not be said that he could have been permitted to correct his own mistake at the expense of his alienee. But the present case appears much stronger for the .defendant than if Ji. Lautier-was alive and was himself the plaintiff: because they who succeeded to his rights, his children, five months after the mistake, was discovered, corrected it by the deed of partition, describing the property minutely, as if for the very purpose of silencing all disputes about measurement, and' dividing the houses not by imaginary lines, bub the lines they were built by. If JI. Lautier had left a will giving the property to. his son and daughter, and dividing it as in the deed of partition, there could be no doubt in the case. Or, if the children had been unable to agree to a partition, and a jury had been called to do it by process of la'w, it seems impossible that a plan such as is here argued for, could have entered into their heads, of dividing three houses between two heirs, and giving a whole house to neither, or of demolishing the entire block-of buildings, because as to one of them the title for two or three feet was defective.
I am anxious that the opinion and the reasons of the court in this case should be fully explained, even at the risk of being tedious; because we are about to reverse the decision of a very respectable court, also to overrule sundry awards of • arbitrators in this and previous cases on-the same points of law; and because it seems *107 to me that the matter in dispute, srnall as it1 is, involvés a principle affecting the title of real, estate throughout the commonwealth. The present is not a case which sometimes happens, of a sale of building lots without a fixed boundary, and to be ascertained by number and distance. There the .purchaser must take,heed, because building over, even by mistake, may not give, him a title to the ground of his neighbour. What we decide now is, that where contiguous lots are bought and built upon by a purchaser, his mistake, if he makes one, though not conclusive against his neighbour, yet is conclusive against himself and against all claiming under him.
A deed of partition is equivalent to a grant. “ A partition of ■lands in fee simple by persons of full age, sound memory, and not-covert, by agreement between them, is good and firm for ever. Lift. Sec. 55.” 1 Inst. 166, a.
. As clear it is, that by law, Sarah Salter claiming under Anthony Lautier, and under his children, is bound by their acts and ■by their deed of partition. In such case, the rule is — All privies in blood, as the heir, privies in estate as the feoffee, lessee, fyc., privies in law as the lord by escheat, tenant by the curtesy, tenant in dower, shall be bound. 1 Inst. 352, a.
■Again, the rule of law is most unquestionable, that when real property is granted, divided, or disposed of 'in any way, by various descriptions, by visible permanent marks and bounds, and at the same time described by distance, by calculation as to quantity, or by any sort of measurement, there if the different descriptions clash, the permanent boundaries shall control and annul the result of the calculation or measurement. As, if such a house is granted, described as extending eighteen feet, though-it is found to extend twenty feet, or thirty; the whole house passes by the grant.. So, if described as fifteen feet, though it contains only twelve, the grantee has no title further, and cannot make up his quantity out of the adjoining ground, though owned by the same grantor. If he has any remedy, it must be on the covenants in his deed, and not by ejectment. , .
How intolerable it would be in the, country, everyone would perceive, if a man holding a patent for one hundred acres, marked and bounded on all sides according to law, and finding that by some mistake, he has in fact but eighty acres, could, to make up the deficiency, break into the lines of his neighbours, and that neighbour, in his tu.rn, upon the one next beyond him, and so on throughout. This would be a strange way of mending errors: out of one to make one hundred; and a mistake in boundaries once started, never to let die till it had gone through the country. Nor do I see why such a rule would not be equally inconvenient in a populous city, and more so, it being certainly less destructive to move the fence of a farm, than it is the wall of a brick house.
The record shows' that Sarah Salter, the plaintiff below, gave parol evidence that by occasion of the original mistake in measure *108 ment, she had actually lost two and a half feet of the middle lot and house, by an ejectment brought by Gest, who had purchased the western brick house when sold by the sheriff, and that to save the property, she had been obliged to pay Gest five hundred dollars. This testimony was admitted by consent,,evidently:' because, when afterwards the record of Gest’s recovery was offered in evidence, it was opposed by the defendant’s counsel and rejected by the court. And the court was most clearly right in rejecting it; for, not only was the recovery between other parties; but was in itself, flagrantly wrong. It seems clear that .the arbitrators who'decided that cause, could not have had the full merits and facts of it laid before them. There all the objections which apply to the present case applied to that plaintiff. He, Gest, not only claimed in right of Mary, and standing in her place, had her previous deed opposed to him upon the records, assuring, if any thing in title can be called an assurance, to Benjamin Láutier, his heirs and assigns, that middle brick house as it stood entire; but the very mistake itself had been discovered five months before the partition, and Mary had taken the frame house with a good title, and the western brick house with a bad title as to two and a-half, feet for her share, and Benjamin, the middle brick house, where there was no bad title, for his share.' Further, Gest had not the pretext, very poor as it would be, of the. loss of two and a half feet of his own western house by the mistake. He appears never to have lost any part: and a very good reason there is for it. For Mary, before the property had-been sold from her to John Gest by the sheriff, had taken the only rational mode of correcting the fault of building Upon another man’s ground, by buying out the interference, and obtaining a deed from James /. Mazurie, the owner, for the whole disputed two and a half feet, as far as it interfered with her brick house, and, paid him for it one hundred and seventy-nine dollars. The full benefit of which purchase, is enjoyed by John Gest, coming into possession under the sheriff’s deed. Yet the mistake of measurement has been kept up ever since, and kept moving: and, oddly enough, Mr. Gest, the very man to whom the piece of bad title, if it yet existed, would solely belong; instead of twelve and a half feet, has had his front made up to seventeen and a half feet, by the equivalent of five hundred dollars, by men who when they decided in his favour, most certainly, in my opinion, had not the full facts before them, otherwise such a ransom would never have been imposed to save the wall of the middle house. But, however, that may be, such payment, upon no principle of law or equity., could give to this plaintiff a right, to recover in the present case, and the evidence was properly rejected.
The word estoppel has been much dwelt upon by the counsel for the defendant in error, in this argument. They say that estoppels are not favoured in the law, but are pronounced odious; that they preclude a party from saying the truth, and must be certain to *109 every intent, or they can hurt nobody: and the law is so. But, notwithstanding the same word was first introduced by Mackentile?s counsel in his points to the court below, contending that no averment should be suffered against the words of the deeds; still, I apprehend there is nothing in this case of the common law notion of estoppel, excepting the name. Any other word of similar import would have done as well. There is nothing odious in holding a man and his representatives bound by a fair deed on a sale or partition of land. Besides, the strict estoppel of the old common law is, I apprehend, when the deed or record .which estops a party is produced against him by the other side. Here, the indenture of partition, which, according to the argument on behalf of the defendant in error, must be absolutely certain to every intent, or go for nothing, is a part of. her own title, produced by herself.
As this cause is to be again tried, there is another point of it appearing on the record, and necessary to be decided by this court. The act of limitations, was relied on by the defendant below. That part of the defence does not, from the record, appear to have been brought directly to the consideration of the court. It would seem to me, that beyond all question, if there had been nothing else in the case,' the limitation would of itself be a complete defence against this ejectment, as far as respects the two and a half feet in question. The deed of partition seems to have given, exclusive possession to Mary on the 26th of November, 1799. On that day the twenty-one years began to run against Benjamin Lautier.. This suit was brought in 1823, after a possession of twentytthree or twenty-four years. There appears exceeding refinement in the argument, which requires direct proof of occupancy during that time. No evidence is given that Benjamin Lautier, or Mrs. Salter, claiming under him, have had possession of the premises in dispute for one mo-' ment during the twenty-four years. Is it to be contended that possession of a dwelling-house in this city is like á settlement right in the woods, only to be kept'up by constant occupancy? If legal possession of such property, could only be by. a .succession of tenants without a vacancy of a day, then I would be content, in the absence of all proof to the contrary, to presume such continued possession in order to give the benefit of the act of limitations against a suit of vexation, for the wall of a man’s house, on a mistake of measurement committed forty odd years ago. Perhaps, if the different owners from 1799 to this day had kept the house locked up without doing any thing further than to repair it and pay the taxes, such possession would come under the safeguard of the act of limitations as effectually as if they had kept a family upon every floor for every hour of the time. .'
Other errors have been assigned. We think there is nothing in them.
The unanimous opinion of the court is, that the. judgment be reversed, and a venire facias de novo awarded'.
Judgment reversed, and a venire facias de novo awarded.