# Casey, Appellant, *v.* Canning.

*Easement—Deeds—Boundaries—Privies.*

1. Where an owner of land subjects part of it to an open, visible, permanent and continuous service or easement in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be.

2. Where four lots on which dwelling houses are erected are owned by one person, and at the common intersection of the four lots there has been constructed a large privy vault with a building over it divided by partition walls into four separate and distinct sections or privies for the use of the four houses respectively, and the owner conveys one of the lots by a deed whose boundaries include two of the contiguous sections or privies, and thereafter conveys to another person the contiguous lot by a deed whose boundaries do not include the contiguous privy section, the grantee in the first deed takes the land conveyed to him subject to the easement of the privy which had always been used by the tenants of the second lot conveyed.

Argued Oct. 20, 1909.  Appeal, No. 124, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 2, Phila. Co.,

Dec. T., 1905, No. 1,862, on verdict for defendant in case of Louise E. H. Casey, Trustee, v. John Canning. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Trespass for interference with an easement.   Before BARRATT, J.

The facts appear by the opinion of the Superior Court and by Casey v. Canning, 39 Pa. Superior Ct. 94.

*Error assigned* was in entering judgment for defendant on the verdict.

*Roland R. Foulke*, for appellant.—The doctrine of implied grant applies: Grace Church v. Dobbins, 153 Pa. 294; Held v. McBride, 3 Pa. Superior Ct. 155.

The use of the privy was a servitude not an estate: Murphy v. Campbell, 4 Pa. 480; Piro v. Shipley, 211 Pa. 36.

The nature of the servitude is immaterial in applying the doctrine of implied grant: Phillips v. Phillips, 48 Pa. 178.

The use of the privy was a necessary appurtenance: Zell v. Universalist Society, 119 Pa. 390.

*D. Webster Dougherty*, for appellee.—The right to the exclusive use, possession and enjoyment of land has always been considered an estate, a corporeal and not an incorporeal hereditament, and unless based on a grant can only be maintained by an adverse possession of twenty-one years: Huff v. McCauley, 53 Pa. 206; Leonard v. White, 7 Mass. 6; Harris v. Elliott, 35 U. S. 25.

The precise question involved in this case was decided by this court in the case of Empire Steel & Iron Co. v. Lawrence, 27 Pa. Superior Ct. 620.   See also Wood v. Truckee Turnpike Co., 24 Cal. 474; Jackson v. Hathaway, 15 Johnson (N. Y.), 447; Post v. Pearsall, 22 Wendell (N. Y.), 425.

OPINION BY HEAD, J., July 20, 1910:

In 1891 there was conveyed to one William Easby a parcel of land in the city of Philadelphia, on the southwest corner of Spruce and Factory or Cypress streets. The property was irregular in shape, fronting about eighteen feet on Spruce street and extending of that width clear through the block to the other street mentioned. Along that street, however, it fronted about sixty feet, making the whole piece L shaped. That portion of the property which fronted only on Factory street had a depth of about thirty-five feet. Although all of the property mentioned was conveyed by a description using only outside lines, as if it were one parcel, it had in fact been previously subdivided into five separate lots on each of which a dwelling house was erected. There were thus four houses on shallow lots facing south on Factory street, whilst one lot of considerably more depth faced north on Spruce street. The accompanying plan will show this subdivision. At the rear of the Spruce street lot, located partly upon it and partly on the shallow lot immediately west of it, there had been constructed a large privy vault with a building over it divided by partition walls into four separate and distinct sections marked on the plan A, B, C and D. As the property was conveyed to Easby, section B opened into the Spruce street lot and was used by its occupant. Section D opened into the rear lot, 2301 Factory street, and was used by the tenants of the dwelling house thereon erected. With the two western sections, A and C, we have no concern. How long this structure had existed and been thus used, the record does not disclose.

With the ground thus subdivided and improved, and with its consequent use thus visible and apparent, Easby in 1892 conveyed to John Canning, the defendant, the Spruce street lot. The deed described it as fronting eighteen feet on Spruce street and extending back of even width along Twenty-third street a distance of seventy feet. It is not denied that the description in this deed plainly includes the two eastern sections B and D of the outbuilding already referred to. The deed was duly recorded. In 1893 Easby conveyed to the

testator of the present plaintiff the remainder of the property. The description in that deed just as clearly excludes the two sections of the outbuilding, although in point of fact no mention of said building or its use, either by way of grant or reservation, is contained in either deed.

There was no way in which section D could be entered from the Spruce street lot conveyed to the defendant, the only entrance thereto being through the premises of the present plaintiff at 2301 Factory street. On receipt of his deed the defendant was put in possession of the Spruce street lot to the extent that it had been used and enjoyed by the previous common owners or their tenants, whilst the later vendee of Easby took possession of the rear lot and enjoyed and used it as it had formerly been used without question or molestation from anyone. The testimony discloses that at the time of the alleged trespass, to be next referred to, there was a fence extending from Twenty-third street across the rear ends of the two lots, thus effectually shutting off the occupant of the Spruce street lot from any access to section D of the outbuilding, the entrance to which, as already stated, opened into the rear lot. The exact time when that fence was built does not appear.

It further appears that in the summer of 1904 some complaint by the board of health resulted in the expenditure of some money by the present plaintiff in order to drain the vault and put it in such condition as would make it conform with the requirements of the board. In the spring of 1905 the defendant, without any warning, tore down and removed the two sections of the outbuilding, B and D, which were embraced within the lines of the description in his deed. As the dwelling house at 2301 Factory street was not otherwise provided with toilet conveniences, its occupants were thus left entirely without them. To recover damages for the injury which the plaintiff alleges was thus wrongfully done to her property she brings this action.

She does not deny that the defendant is the owner of the land on which all of the building that he removed stood. Nor does she contend that any portion of it is included within the

lines of her own deed. She rests her claim on the proposition that because of the manner in which the common owner had subdivided his property, and the visible uses to which it was subjected, there arose, upon his conveyance to the defendant, an easement, in favor of the premises she afterwards bought, to continue the use of the outbuilding in the same manner as it had been arranged by the common owner for the use of the several properties. She relies upon a rule of the law which is thus stated by Mr. Justice MITCHELL in Grace Church v. Dobbins, 153 Pa. 294, "Where an owner of land subjects part of it to an open, visible, permanent and continuous service or easement in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be." Of the existence of such a rule from early days in Pennsylvania there can be no doubt after an examination of the cases cited in the opinion from which we have just quoted. It was recognized and enforced by this court in Held v. McBride, 3 Pa. Superior Ct. 155, where the opinion of the late Judge SMITH reviews the many cases asserting the doctrine. A study of the decisions of the courts of other states shows that the recognition of this principle is widespread, if not universal, in this country. If we were to look only at the reason of the rule as stated by Mr. Justice MITCHELL, we might be led to the conclusion that the principle applied only when the easement was set up by the grantee as an implied grant, and not where it was asserted by the grantor, for the benefit of himself or a later grantee, as an implied reservation in the first grant. "This is the general rule founded on the principle that a man shall not derogate from his own grant," says the learned judge. But it is clear enough that the rule in Pennsylvania, as well as in other states, is reciprocal, because the opinion continues, "The cases in which the subject has most frequently come before this court, are those in which the grantor has conveyed the servient tenement, and the question has been whether the purchaser took subject to the easement remaining in the estate of the grantor, Overdeer v. Updegraff, 69 Pa. 110, and the rule has been uniformly held to be as above stated."

In the case last mentioned Mr. Justice WILLIAMS says, "But if there had been no express reservation of the right to the use of the alley in the conditions of sale and in the deed executed and delivered to the purchaser, the latter would have taken it subject to the servitude imposed upon it by the decedent for the use and benefit of the occupants of the adjoining lot. It was a continuous and apparent easement, and the law is well settled that in such a case the purchaser, whether at private or judicial sale, takes the property subject to the easement."

Whilst then the principle of the implied reservation of an easement in favor of a grantor may not rest on precisely the same ground as the cognate doctrine of the implied grant of an easement in favor of the grantee, its foundation is none the less secure and substantial. It is well stated by Mr. Justice VANN in Wells v. Garbutt, 132 N. Y. 430, 30 N. E. Repr. 978, thus: "The doctrine of implied reservation rests upon the presumed intention of the parties as it is gathered from the conveyance, interpreted in the light of the circumstances surrounding them when it was executed, and with reference to which, as existing facts, they are supposed to have contracted." So it was said by Chief Justice HAND in Powers v. Heffernan, 233 Ill. 597, "This is not a rule for the benefit of purchasers only, but is entirely reciprocal. Hence, if instead of a benefit conferred a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts." The same idea, we think, is expressed by our own Chief Justice GIBSON in Murphy v. Campbell, 4 Pa. 480, in the following language: "Were it necessary to put the cause on that point, the question would be, whether the use of the privy in contest could be brought within the operation of the plaintiff's conveyance as a thing previously annexed to the subject of it; and the construction would be governed by the intention of the parties,

deduced not only from their words, but from the previous disposition and enjoyment of the property."

We are not able to agree with the learned counsel for the appellant that the case last cited is on all fours with the present one and therefore conclusively rules it, although the reasoning of the chief justice just quoted is in harmony with the general trend of decision and strongly supports the conclusion we have reached. The case there actually went off on the proposition that the plaintiff's deed was to be construed, not according to the courses and distances mentioned in it, but rather by its metes and bounds, and that thus construed it actually embraced the portion of ground which was the subject-matter of that contest. It has, however, been subsequently cited by the Supreme Court in support of the proposition embraced in the first clause of the opinion, to wit: "Under special circumstances the word appurtenances has been allowed to include land." If then we construe the deed from Easby to Canning, the defendant, according to "the presumed intention of the parties as it is gathered from the conveyance, interpreted in the light of the circumstances surrounding them when it was executed, and with reference to which, as existing facts, they are supposed to have contracted," it is not easy to escape the conclusion that there was an implied reservation of an easement for the continued use of section D of the outbuilding in favor of the occupants of the Factory street lot. Some earlier common owner of the entire property had so arranged and subdivided it that it would accommodate a number of tenants. In doing this the requirements of health and decency alike demanded that some provision, similar in effect at least to that actually adopted, be made for the necessary convenience of the tenants. The plan selected was well adapted to accomplish the purpose in view; the subdivision of the property was actual and visible; the manner in which each lot was supplied with the necessary convenience referred to was apparent to the eye of the purchaser; and the entire arrangement was of a permanent character. The intention of the parties must have been directed to these existing facts, and in the light of them they dealt. The long acquiescence

of the defendant, although it furnishes no foundation for an easement by prescription, is significant of the interpretation put upon his conveyance by the parties to it. It seems to us, therefore, after careful consideration that every element is present to invite and require the application of the principle we have referred to.

The learned counsel for the appellee ably and earnestly argues that this principle cannot be applied to the facts of the present case for the reason that what the plaintiff claims is not an easement to use a portion of the defendant's land in common with him, but to maintain such an exclusive and adverse possession as would in time ripen into a title to the soil itself. This theory, however, does not seem to rest upon any substantial foundation of fact. It was not necessary to the proper and reasonable enjoyment of the easement, claimed by the plaintiff, that her possession of that portion of the building should be at all times exclusive and adverse to the real owner of the soil. Had she thus attempted to surcharge her easement and develop it into a title to the land itself, a remedy at law or in equity would have been available to the owner to prevent the clandestine acquisition of his title. We are impelled to the conclusion, therefore, that the plaintiff has suffered an injury which, although it may not be great, measured financially, is sufficiently substantial to enable her to maintain this action.

As the record stands now there has never been any liquidation of her damages, if indeed the record discloses any evidence upon which she could recover more than nominal damages. As the case was tried, the learned court below directed a verdict for the defendant. Upon consideration later of a motion for judgment non obstante veredicto he directed a general judgment in favor of the plaintiff. Upon an appeal to this court, Casey v. Canning, 39 Pa. Superior Ct. 94, it was held that such judgment was improvidently entered and had no basis upon which it could rest. The record was therefore remitted with direction to enter judgment for the defendant, on the verdict and without prejudice to the right of the plaintiff to appeal from such judgment. Her appeal is now before

us.   In reversing the judgment, we are compelled to award a new venire so that the case may be tried out to its legitimate end.

Judgment reversed and a venire facias de novo awarded.