## Mertens's Estate

*Marsh & Eaton,* for petitioner.

*English, Quinn, Leemhuis & Tayntor, Enoch C. Filer, Gunnison, Fish, Gifford & Chapin, Harry L. Moore, R. L. Roberts* and *P. Vincent Gifford,* contra.

WAITE, P. J., May 27, 1932.—On May 5, 1932, the executor presented a petition in the above estate for leave to lease and collect rent from decedent's real estate, setting forth that Charles A. Mertens died testate on March 31, 1932; that the will was duly registered and letters testamentary granted to petitioner. Exhibit "D" attached to the petition shows that decedent was the owner of eight pieces of real estate in the City of Erie, Pa.; an undivided one-half interest in the property known as Nos. 114-122 West Twelfth Street; an undivided 47/96ths interest in the property situate at the northeast corner of Eleventh

and State Streets, known as the Lincoln Building; an undivided 55/60ths interest in the property at Nos. 1121-23 State Street, known as the Cadillac Building, and also a farm of about 105 acres in Fairview Township, Erie County, Pa. There is also attached to the petition exhibit "B," a copy of the inventory showing personal property of the decedent's estate of the value of $7068.76, and exhibit "C," giving a summary of the indebtedness of the estate, amounting to $706,918.26. It is admitted that the estate is insolvent and that the payment of interest and taxes on the several mortgaged properties is in default. The petition also sets forth that the personal property is insufficient for the payment of decedent's debts, and concludes with the following prayer:

"Wherefore, your petitioner prays that he may be authorized and directed, pursuant to section fourteen of the Fiduciaries Act of 1917, to collect the rents of said real estate accruing since the death of said decedent and also to lease and let the unrented portions of the premises aforesaid, subject to the sale of said premises, and collect rental therefrom, for such rentals as he may deem just and proper for the payment of the debts of said decedent. And he will ever pray," etc.

Whereupon the court granted the following rule:

"And now, to wit, May 5, 1932, upon consideration of within petition, a rule to show cause is granted, returnable Monday, May 16, 1932, at 10 o'clock A. M. At least five (5) days' notice to be given to all mortgagees and co-owners of real estate with the decedent. Per curiam, Waite."

Answers were filed by several of the mortgagees and also by the owners in common with the decedent of two of the properties listed in exhibit "D," objecting to the making of an order by the court as prayed for in the petition. The matter was argued before the court on May 20, 1932.

At common law, a mortgage may be defined as an estate created by a conveyance absolute in form, but intended to secure the performance of some act, such as the payment of money, or the like, by the grantor or some other person, and to become void if the act is performed agreeably to the terms prescribed at the time of making such conveyance. It is, therefore, an estate defeasible by the performance of a condition subsequent. The mortgagee is entitled to possession unless it is agreed that the mortgagor shall retain possession: Helfenstein's Estate, 135 Pa. 293.

The time fixed for the payment of the debt or other performance of the condition was called the "law day," and if the debtor punctually performed his part of the contract at the appointed time, the estate of the mortgagee determined and ceased. As the legal title was vested in the mortgagee, the estate was not revested in the mortgagor by the mere act of payment, but it was necessary that the mortgagee should reconvey to him by deed. On the other hand, if the debtor failed to pay or perform at the stipulated time, the title of the mortgagee became absolute and the mortgagor ceased to have any right or interest in the estate. See 41 C. J. 273.

The English courts of equity at an early date began to look with disfavor upon this common-law rule of forfeiture of the estate upon nonpayment. They accordingly established the rule that in equity a mortgagor should have the right to redeem after breach. In equity a mortgage of lands is regarded as a mere lien or security for a debt, and until foreclosure the mortgagor is the real owner of the fee. See 41 C. J. 275.

In Pennsylvania, while it is held in general that a mortgage is both in law and in equity only security for the performance of the condition and vests no estate in the mortgagee: Merchants' Union Trust Co. v. New Phila. Graphite Co., 10 Del. Ch. 481, 83 Atl. 520, construing Pennsylvania Law; Shields v.

City of Pittsburgh, 252 Pa. 74; yet, as between the parties to the instrument or their privies, it is a grant which operates to transmit the legal title to the mortgagee, together with the right of possession: Tryon et al. *v.* Munson et al., 77 Pa. 250; and he may maintain ejectment therefor: Brobst *v.* Brock, 10 Wall. (U. S.) 519, 11 L. Ed. 1002; where there is no stipulation to the contrary.

But a mortgage, although in form a conveyance of title to land, is in reality only a security for the payment of money, a thing separate and distinct from the property upon which it is a lien—the one being *personalty* and the other *realty*, and a demise of realty in a will on which testator had a mortgage did not give title to the mortgage: Colonial Trust Co. et al. *v.* Homan et al., 29 Dist. R. 912.

In Youngman et al. *v.* Elmira & Williamsport Ry. Co., 65 Pa. 278, it was held that a mortgagee could maintain ejectment for the mortgaged premises even before condition broken, in the absence of a stipulation to the contrary.

There can now be no doubt in Pennsylvania that in case of default the mortgagee has the right to take possession of the mortgaged premises and to collect the rents. In Bulger *v.* Wilderman & Plcet, 101 Pa. Superior Ct. 168, 172, Mr. Justice Keller, in an opinion in which the authorities both in Pennsylvania and in other jurisdictions are carefully reviewed, says:

"The mortgagor remains the owner of the land mortgaged, but the mortgagee, is entitled to its possession to be held as security until his debt is paid. In case of default the mortgagee may proceed on the bond, or he may issue a scire facias on the mortgage, but he is not limited to those remedies. He may also bring ejectment against the mortgagor, and those claiming under him, to recover the possession. His right of possession is not founded on his right to bring ejectment; his right to bring ejectment is based rather on his right to possession under the mortgage; and if he can enter on the premises, without any breach of the peace, he has the right to do so and take the profits until his debt is paid: Erny *v.* Sauer, 234 Pa. 330, 334."

Reviewing the above case, Mr. Justice Simpson, delivering the opinion of the court in Randal *v.* Jersey Mortgage Investment Co. et al., 306 Pa. 1, 5, 6, says:

"The relevant questions there decided are as follows:

"1. While ordinarily, as to third parties, a mortgage may be only a security for the debt specified in the accompanying bond, it is, as to the mortgagor and mortgagee, and those claiming under and through them, a conveyance of the land, and may be enforced as such whenever the mortgagee deems it necessary so to do in order to enable him to speedily and effectively recover the amount then due on the bond.

"2. Whenever it is necessary for a mortgagee, or his assignee, to enter into possession of the mortgaged property, in order to secure effectively what is due to him under the bond, he may do so peaceably, if he can, or by ejectment, if this becomes necessary. . . .

"5. If the mortgagee or his assignee collects rents from the tenant by virtue of the right so to do given by the mortgage, he must account therefor to the mortgagor, or those claiming title under him, and allow the net amount as a credit on the mortgage debt."

It is true that in both of the cases last cited there were clauses in the mortgages conveying the "rents, issues and profits," while in this case the several mortgages grant instead, inter alia, "the rights, privileges, hereditaments and appurtenances." An appurtenance is defined as all essential rights and incidents which belong to the property conveyed and are necessary to its full enjoyment and pass without mention in the deed: Murphy *v.* Campbell, 4 Pa. 480,

and Casey *v.* Canning, 43 Pa. Superior Ct. 31. The rent is an "essential right and incident" of a conveyance necessary to its full enjoyment, and is, therefore, as fully conveyed by the terms of the mortgages here as in the cases above cited.

It was said by Mr. Chief Justice Shaw, in Burden *v.* Thayer et al., 3 Met. 76 (Mass.):

"The rents and profits of the mortgaged premises constitute a part of the fund pledged for the payment of the principal and interest of the debt to be secured. . . . As the mortgage transfers the reversion, to which the rent is incident, as it binds the whole of the realty, of which the rents afterwards accruing are a part; he [the mortgagee] may give notice of his right to the lessee, and of his election to take the rents; and then the lessee becomes bound to pay the rent to him as mortgagee."

It is conceded by petitioner that the mortgagee has the right to enter into possession and collect the rents where the mortgagor is still living, but it is urged that a different rule obtains where the mortgagor is deceased, under the provisions of section fourteen of the Fiduciaries Act of 1917, P. L. 447. Section fifteen (h) of the act provides:

"Nothing contained in this section shall in any way affect or impair the lien of any mortgage given and executed, and duly recorded, during the lifetime of any decedent; but the bond secured by such mortgage, except as to real estate on which said mortgage is a lien, shall be subject to all the provisions hereof."

The real purpose of section fourteen of the Fiduciaries Act is pointed out by the opinion of the court in Reel's Estate, 263 Pa. 248. After quoting this section in full, the court says (page 250):

"This is new and very wise legislation, for before its passage the rents accruing from the real estate of a decedent owner went to his heirs and devisees from the time of his death: Haslage *v.* Krugh, 25 Pa. 97; Fross's Appeal, 105 Pa. 258; and the heir or devisee of an insolvent decedent took such rents at the expense of the creditors of the estate. To remedy this long-existing injustice by making rents, as well as the land out of which they issue, assets for the payment of the debts of a decedent, the fourteenth section of the Act of 1917 was passed."

In our opinion, it was not the intention of the legislature to interfere in any way with any rights which a mortgagee may have had in the mortgaged premises at the time of the decedent's death. If such were the intention of the legislature, no notice of this purpose being "clearly expressed" in the title of the act, it would, to that extent, be unconstitutional. That such was not the intention we believe is clearly shown by that part of section fourteen which reads as follows: "In such case the executor or administrator shall have power to collect such rents by action at law, distress, or otherwise, as the decedent in his lifetime might have done as to rents of such real estate.".

That is the limit of the executor's or administrator's right to collect rents. The mortgagee might have entered into possession and collected the rents before the decedent's death, peaceably, if unopposed, or by ejectment, if necessary, and may still do so. The decedent could not have prevented this then, nor may the executor do so now. The executor's "power to collect such rents by action at law, distress, or otherwise" are only such "as the decedent in his lifetime might have" exercised.

In the case at bar several of the mortgagees and cotenants object to the executor collecting the rents for the payment of decedent's debts. Both interest and taxes in each case are in default, in some instances extending back for several years. The petition prays for leave to collect the rents for the purposes of the payment of the debts of the decedent. This, in our opinion, would be inequitable

and unfair to the mortgagees and cotenants who object. In several of the cases in which answers have been filed, it appears that the estate of the decedent has very little equity, if any, in the property described.

As to all the properties in which the decedent held title in common with other persons, the prayer of the petition must be denied. In these several properties the decedent was, in his lifetime, apparently acting as agent in securing tenants, collecting rents and generally managing the properties. But death terminates agency. It is no longer binding on the survivors or on the estate of the deceased. The court has no control over these co-owners and could make no order affecting their rights in these properties that would be binding on them. These questions will have to be adjusted between the co-owners themselves.

As to the other real estate of decedent where the mortgagees, who have had notice of this proceeding, have filed no objection, we can see no reason why this petition should not be granted for a limited time from the date of decedent's death (subject to the right of the mortgagees and of the collectors of taxes to exercise their rights at any time). The estate being insolvent, the rentals from each property so collected must be properly earmarked and kept separate and distinct from the properties of the estate, to be first applied to the payment of taxes and interest on the individual properties covered by the several mortgages. In the meantime, the executor should "proceed without delay" to sell and dispose of decedent's real estate, as provided in section sixteen of the Fiduciaries Act, it appearing "that the personal estate of the decedent, together with the rents of real estate, is insufficient to pay all just debts and the expenses of the administration".

Questions as to other rights, duties and obligations between the estate and the several co-owners and the several mortgagees are not before the court in this proceeding and we cannot undertake to pass upon them.

All of the rents, issues and profits that may be collected by the several mortgagees must be first applied to the payment of taxes, interest on the mortgage, and other liens against the particular property covered by the mortgage, the whole to be strictly accounted for and the surplus, if any, turned over to the estate of the decedent. This should benefit the estate, increase the equity in the several properties and the amount to be realized from the sale of the real estate under the provisions of the Fiduciaries Act, and inure to the benefit of the general creditors of the estate.

For the reasons herein set forth we make the following

## Order

And now, to wit, May 27, 1932, after argument and upon due consideration, the prayer of the petition is denied as to the following three properties in which the estate of the decedent has an interest in common with other cotenants, to wit, the property situate at the northeast corner of Eleventh and State Streets, known as the Lincoln Building, Erie, Pa.; the property situate at Nos. 1121-1123 State Street, known as the Cadillac Building, Erie, Pa.; the property situate on the north side of Twelfth Street between Peach and Sassafras Streets, known as Nos. 114-122 West Twelfth Street, Erie, Pa.

And the prayer of the petition is also denied as to the several mortgaged properties in which answers have been filed by the mortgagees, objecting to the making of an order by the court authorizing the collection of rents by the executor for the payment of decedent's debts, viz., the property situate at Nos. 1111-1113 State Street, known as Union Building, Erie, Pa.; the property situate at No. 14 East Eighth Street, Erie, Pa.; the property situate at Nos. 14-16 West Eleventh Street, Erie, Pa.; the property situate at Nos. 18-24 West Eleventh Street, Erie, Pa.; the property situate at No. 3140 Elmwood Avenue,

Erie, Pa.; the property situate at Nos. 922-924 West Thirty-second Street, Erie, Pa.; the property situate at No. 4435 Cherry Street, Erie, Pa.; the property situate at No. 916 Plum Street, Erie, Pa.; the property situate at No. 1745 Oxford Drive, Erie, Pa.

As to the remaining real estate of decedent, the prayer of the petitioner is granted and the executor is authorized to lease and to collect the rents from said real estate for a period not to exceed six months from this date (subject to the rights of the mortgagees of the said remaining properties and also subject to the rights of the collectors of taxes against each of these properties). The rents collected from each of the said remaining premises to be properly earmarked and segregated and kept in separate and distinct accounts and to be applied first to the payment of taxes against each piece of property and then to the payment of interest on lien debts, and any remaining funds from the collection of said rents to be used for the purposes set forth in the petition.

From Otto Herbst, Erie, Pa.